Jeffrey OTHERSON, Petitioner,

v.

**DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 82–1991.

United States Court of Appeals, District of Columbia Circuit.

Argued April 18, 1983.

Decided June 21, 1983.

As Amended June 21, 1983.

---

Gordon P. Ramsey, Boston, Mass., of the bar of the Supreme Court of Massachusetts pro hac vice by special leave of Court, for petitioner.

John S. Koppel, Atty., Dept. of Justice, Washington, D.C., with whom Stanley S. Harris, U.S. Atty., and Robert S. Greenspan, Atty., Dept. of Justice, Washington, D.C., were on the brief, for respondent. Evangeline W. Swift, Washington, D.C., Atty., Merit Systems Protection Bd., also entered an appearance for respondent.

Before EDWARDS, Circuit Judge, and McGOWAN and MacKINNON, Senior Circuit Judges.

Opinion for the Court filed by Senior Circuit Judge McGOWAN.

McGOWAN, Senior Circuit Judge:

Jeffrey Otherson formerly worked as a border patrol agent for the Immigration and Naturalization Service (INS). INS discharged him after he and a co-worker received criminal convictions for physically abusing aliens according to a prearranged scheme they carried out during working hours with apparent zest. When Otherson appealed his discharge, the Merit Systems Protection Board (MSPB) held that the doctrine of issue preclusion, also known as col-

lateral estoppel, forbade him from relitigating the facts established at the criminal trial. It also found discharge appropriate given the nature of Otherson's misconduct.

On review of this order, we are asked to resolve three questions: (1) whether issues determined at prior criminal trials may ever be preclusively established at later MSPB adverse action hearings; (2) whether the MSPB properly found preclusion appropriate in the particular circumstances of this case; and (3) whether discharge was an appropriate sanction for Otherson's misconduct. We answer all three questions in the affirmative and thus deny Otherson's petition for review.

I

On September 24, 1979, the government filed criminal charges against Otherson and three other INS agents for systematically mistreating aliens on July 3 and 4, 1979. The four counts applicable to Otherson alleged a conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (1976), and deprivation under color of law of the rights of inhabitants of California in violation of 18 U.S.C. § 242 (1976). After eight days of trial, resulting in approximately 1,500 pages of transcript, and six days of jury deliberation, the jury was deadlocked eleven to one in favor of conviction, and the judge granted a mistrial. Appendix ("App.") 65; Administrative Record 56.

After the mistrial the parties agreed to proceed as follows. First, the government agreed to drop the felony charge from the first trial alleging conspiracy to defraud the United States. *See* App. 15. Accordingly, on January 29, 1980, the government filed a two-count superseding information charging Otherson and another agent with misdemeanor federal offenses. It alleged that they had deprived aliens of federal rights in violation of 18 U.S.C. § 242 (1976),[1] and had

---

1. 18 U.S.C. § 242 (1976) provides:
 *Deprivation of rights under color of law*
 Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any

rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punish-

conspired to effect this deprivation in violation of 18 U.S.C. § 371 (1976).[2] The offending conduct involved several instances of on-duty physical assaults against aliens according to a prearranged scheme. The details of the defendants' conduct are set forth in the Ninth Circuit's affirmance of their ultimate conviction, *United States v. Otherson*, 637 F.2d 1276, 1277–78 (9th Cir. 1980), *cert. denied*, 454 U.S. 840, 102 S.Ct. 149, 70 L.Ed.2d 123 (1981).

Second, the parties agreed to proceed without a jury on the basis of a stipulated record. The parties stipulated that if six of the government's witnesses were recalled, they would testify on both direct and cross-examination[3] as they had at the first trial. The parties also stipulated that three of the government's exhibits be admitted into evidence and considered by the court. The stipulation, did not, however, introduce any of the testimony or evidence the defendants introduced at the first trial. This was at least one of the concessions that induced the government to reduce the charges to misdemeanor offenses.

On March 17, 1980, the trial judge found both defendants guilty on both counts. He fined Otherson $1,000 for one count, and suspended sentence on the other, placing Otherson on three years' probation and ordering him to perform 750 hours of community service. Otherson appealed to the Ninth Circuit, arguing (1) that aliens are not "inhabitants" of a state within the meaning of 18 U.S.C. § 242 (1976); and (2) that the statute does not apply to actions under color of federal law, but only those under color of state law. On November 6, 1980, the court of appeals rejected both arguments, *United States v. Otherson*, 637 F.2d 1276 (9th Cir.1980), and the Supreme Court later denied certiorari, 454 U.S. 840, 102 S.Ct. 149, 70 L.Ed.2d 123 (1981).

On June 2, 1980, INS removed Otherson from his job effective June 13, 1980, having notified him of its proposal to do so on February 28.[4] INS cited Otherson's mistreatment of aliens as the reason for removal and specified the same acts of misconduct contained in the superseding information on which Otherson had been convicted. Otherson appealed his removal to the MSPB. At a hearing before a presiding official, the INS bore the burden of proving beyond a preponderance of the evidence, 5 U.S.C. § 7701(c)(1)(B) (Supp. V 1981), that Otherson's removal would "promote the efficiency of the [federal] service," *id.* § 7513(a).

---

ment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if death results shall be subject to imprisonment for any term of years or for life.

The information also charged violation of the aiding and abetting statute, *id.* § 2. That section provides:

*Principals*

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**2.** 18 U.S.C. § 371 (1976) provides:

*Conspiracy to commit offense or to defraud United States*

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

**3.** Otherson claimed at the MSPB hearing that the stipulation included only the direct examination, not the cross-examination. The presiding official found otherwise, for the stipulation stated that each of the government's witnesses "would testify in accordance with his trial testimony." App. 69. At oral argument before this court, Otherson's attorney conceded that the stipulation included both direct and cross-examination.

**4.** INS had previously suspended both Otherson and his co-defendant indefinitely pending the disposition of the criminal charges. Those suspensions are now on review in *Otherson v. Department of Justice*, No. 82–1761 (D.C.Cir. filed July 7, 1982), and *Brown v. Department of Justice*, No. 82–1729 (D.C.Cir. filed June 30, 1982).

INS relied on Otherson's criminal conviction to prove that he had in fact committed the specified misconduct. In addition, it offered the testimony of the INS official who removed Otherson. The official testified that he reviewed the record of the criminal proceedings and that the seriousness of Otherson's criminal acts made removal appropriate. App. 29–30.

The presiding official affirmed Otherson's removal. App. 63–75. First, she rejected Otherson's contention that prior judicial determinations could never preclusively establish issues in MSPB hearings, citing the Board's decision in *Chisholm v. Defense Logistics Agency,* 3 M.S.P.B. 273 (1980), aff'd, 656 F.2d 42 (3d Cir.1981). Second, after reviewing the entire record of the criminal trials, she found that the factual issues of misconduct in the adverse action hearing were identical to those in the criminal proceeding, and that they had been actually litigated and necessarily determined at the criminal trial. Accordingly, she found preclusion appropriate for those issues and refused to consider Otherson's attempts to deny he had in fact mistreated aliens. App. 72. Finally, she concluded that removal would promote the efficiency of the service, commenting that the agency could not tolerate such visible and flagrant violations of law. Otherson then sought review of the presiding official's decision by the full MSPB. The Board denied the petition, stating that the MSPB "is entitled to rely on the doctrine of collateral estoppel, and finds that the doctrine was properly applied by the presiding official in [this] case[ ]." App. 77.

Finally, Otherson sought review of the MSPB's final decision in this court.[5] He presses before us the three major contentions he raised before the presiding official. First, he argues that an employee's statutory right to a hearing in appeals to the MSPB makes issue preclusion inappropriate. Second, he argues that the doctrine of issue

preclusion, even if applicable in MSPB hearings, does not bar relitigation given the particular circumstances of the criminal conviction. Finally, he argues that discharge was not an appropriate sanction. We address and reject each contention in turn.

## II

■ Courts have often held that issues determined in connection with a criminal conviction may be taken as preclusively established for the purposes of later civil trials. *See Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 568–69, 71 S.Ct. 408, 413–14, 95 L.Ed. 534 (1951); *McCord v. Bailey,* 636 F.2d 606, 608–11 (D.C.Cir.1980), cert. denied, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981). Courts have less frequently addressed, however, the effect of criminal convictions or other judicial determinations in later administrative proceedings. Otherson claims that the judicial doctrine of issue preclusion has no place in MSPB hearings. Squarely against his contention, however, is a recent holding of the Third Circuit in *Chisholm v. Defense Logistics Agency,* 656 F.2d 42 (3d Cir.1981). We find the *Chisholm* court's reasoning persuasive and thus hold that issues determined in a criminal conviction may be accorded preclusive effect at a later MSPB adverse action hearing if the normal standards for preclusion are satisfied.

Congress established the MSPB as "a quasi-judicial body." S.REP. No. 969, 95th Cong., 2d Sess. 24 (1978). U.S.Code Cong. & Admin.News 1978, 2723. As the Third Circuit held,

the same policy reasons which underlie use of collateral estoppel in judicial proceedings are equally applicable when the administrative board acts as an adjudicatory body. It is well established that the doctrine of collateral estoppel contributes to efficient judicial administration, serv-

---

**5.** Otherson filed his petition for review on Aug. 25, 1982, under 5 U.S.C. § 7703(b)(1) (Supp. V 1981). Since Oct. 1, 1982, petitioners have been required to file for review in the United States Court of Appeals for the Federal Circuit.

Federal Courts Improvement Act of 1982, § 144(1), 5 U.S.C.A. § 7703(b)(1) (Supp.1983); see id. § 402, 96 Stat. 25, 57 (1982) (effective date).

ing the public interest in judicial economy as well as the parties' interests in finality, certainty of affairs and avoidance of unnecessary relitigation.

*Chisholm,* 656 F.2d at 46. It should be remembered also that issue preclusion is appropriate in only certain circumstances and is subject to important exceptions to prevent unfairness. *See generally* RESTATEMENT (SECOND) OF JUDGMENTS §§ 27–29 (1982). Indeed, even as the Third Circuit held the principles of preclusion appropriate in MSPB hearings, it remanded the *Chisholm* case for the MSPB to inquire more carefully into the prior criminal conviction to determine the precise issues "in fact litigated and necessarily decided adversely" to the defendant. *Chisholm,* 656 F.2d at 50. Given the care with which courts have elaborated the doctrine of preclusion, we see no reason why the MSPB may not apply the doctrine in its own hearings as circumstances permit.

The heart of Otherson's contention that issue preclusion is always inappropriate is that an employee has a right to a hearing in adverse action appeals to the MSPB, 5 U.S.C. § 7701(a)(1) (Supp. V 1981). He also notes that, although the Senate version of the Civil Service Reform Act of 1978 permitted the MSPB to grant a motion for summary decision when no material facts were in dispute, the conference adopted the House version which contained no provision for summary decision. *See* H.R.REP. No. 1717, 95th Cong., 2d Sess. 137 (1978) (conference report). This, he says, underscores the importance Congress attached to a full hearing before the MSPB.

The fact that Congress guaranteed employees one full opportunity to be heard, however, does not mean that Congress intended them to have more than one. Issue preclusion is only appropriate when a party had a full and fair opportunity to present his case at a prior hearing, *see* RESTATEMENT (SECOND) OF JUDGMENTS § 28(5)(c), and the employee may always argue in his hearing before the MSPB that the prior proceeding failed to meet this standard. Just as application of issue preclusion in civil trials does

not unlawfully deprive litigants of their day in court, neither does application of issue preclusion in MSPB hearings deprive employees of their statutory hearing rights. Moreover, only those issues determined against the employee at the earlier proceeding may not be contested again. Employees whose misconduct is established preclusively will thus still have an undiminished opportunity to press other arguments before the Board, such as whether removal would promote the efficiency of the service.

In another attempt to show that preclusion has no place in MSPB hearings, Otherson points to the decision of a labor arbitrator who declined to give preclusive effect to a prior criminal acquittal. *In re Chrysler Corp.,* 53 Lab.Arb. (BNA) 1279, 1282 (1969). Otherson suggests that the MSPB's resolution of employment disputes is more like a labor arbitration than like a court hearing and that therefore the preclusion rules appropriate to the former should govern MSPB hearings. The Third Circuit discussed this very arbitral decision, however, and concluded that the arbitrator did not announce a blanket rule against preclusion; rather, he found preclusion inappropriate because he lacked information about the prior proceeding and also because a criminal acquittal proves less about a defendant's innocence than a conviction proves about a defendant's guilt. *Chisholm,* 656 F.2d at 47 n. 8. Indeed, the court questioned whether most arbitrators refused to invoke preclusion, pointing to other arbitral decisions in which convictions were accorded preclusive effect. *Id.* at 47 n. 9. Finally, the court explained that the rules appropriate for private labor arbitrations may not be appropriate for hearings before the MSPB: "[A]rbitrators are part of a system of self-government created by contract between private parties and are not public tribunals imposed upon the parties by external authorities." *Id.* at 47.

We largely agree with the Third Circuit's reasons for thinking that the *Chrysler* arbitration does not mean preclusion has no place in MSPB hearings. We do note, however, that arbitration may be available as a

mutually exclusive alternative to appeals to the MSPB. 5 U.S.C. § 7121(e)(1) (Supp. V 1981). As we explained in *Devine v. White,* 697 F.2d 421 (D.C.Cir.1983), these arbitrations are statutorily required to be similar to MSPB hearings in some respects but in other respects may be different. We need not and do not decide the permissible role of preclusion in those arbitrations. We hold only that the MSPB may invoke preclusion as appropriate in adverse action hearings.

### III

Otherson's next attack is on the appropriateness of giving preclusive effect to facts underlying this particular criminal conviction. Because his attack is on several fronts—some at which he fights more fiercely than others—it will be wise to set out in brief form the elements of issue preclusion, also known as collateral estoppel. Along with the doctrine of claim preclusion or res judicata, issue preclusion aims to avert needless relitigation and disturbance of repose, without inadvertently inducing extra litigation or unfairly sacrificing a person's day in court. As the Supreme Court has explained,

> "a party who has had one fair and full opportunity to prove a claim and has failed in that effort, should not be permitted to go to trial on the merits of that claim a second time. Both orderliness and reasonable time saving in judicial administration require that this be so unless some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a particular case."

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 324–25, 91 S.Ct. 1434, 1440–41, 28 L.Ed.2d 788 (1971) (quoting *Bruszewski v. United States,* 181 F.2d 419, 421 (3d Cir.), *cert. denied,* 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950)).

■ Issue preclusion establishes in a later trial on a different claim identical issues resolved in an earlier trial, if certain conditions are met. First, the issue must have been actually litigated, that is, con-tested by the parties and submitted for determination by the court. *See Cromwell v. County of Sac,* 94 U.S. 351, 353, 24 L.Ed. 195 (1877) ("only as to those matters in issue or points controverted") (quoted in *Mercoid Corp. v. Mid-Continent Investment Co.,* 320 U.S. 661, 671, 64 S.Ct. 268, 273–74, 88 L.Ed. 376 (1944)); *Stebbins v. Keystone Insurance Co.,* 481 F.2d 501, 508 (D.C.Cir. 1973). Second, the issue must have been "actually and necessarily determined by a court of competent jurisdiction" in the first trial. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) (citing draft version of what became RESTATEMENT (SECOND) OF JUDGMENTS § 27). *See also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979) ("necessary to the outcome of the first action"); RESTATEMENT (SECOND) OF JUDGMENTS § 27 ("essential to the judgment"); *accord Association of Bituminous Contractors, Inc. v. Andrus,* 581 F.2d 853, 859–60 (D.C.Cir.1978). Third, preclusion in the second trial must not work an unfairness. Preclusion is sometimes unfair if the party to be bound lacked an incentive to litigate in the first trial, especially in comparison to the stakes of the second trial. *See Blonder-Tongue Laboratories,* 402 U.S. at 333, 91 S.Ct. at 1445 (in connection with preclusion against plaintiff in second action who lost as plaintiff in first action against a different defendant); *see also Parklane Hosiery,* 439 U.S. at 330, 99 S.Ct. at 651 (heightened concern for potential unfairness from preclusion against defendant in second action brought by plaintiff not a party to the first suit). We now consider each factor with respect to preclusion at Otherson's MSPB hearing.

### A. *Necessarily Determined in the First Action*

■ We can dispose of one element without much difficulty: whether the criminal trial necessarily determined the facts the government sought to establish preclusively at the MSPB hearing. Otherson notes that each count against him and his co-defendant included either conspiracy, 18 U.S.C.

§ 371 (1976), or aiding and abetting, *id.* § 2, as a source of liability. He also notes that the judge rendered no special findings of fact.· Perhaps, he argues, the judge's general verdict did not decide in the government's favor on every fact the government alleged and to which the government's witnesses testified. Perhaps the court found Otherson's own involvement to be less direct and substantial than alleged, illegal only on grounds of conspiracy or aiding and abetting.

We find this argument unconvincing. Otherson has not shown that " 'a rational [factfinder] could have grounded its verdict upon an issue other than that which the [party] seeks to foreclose from consideration.' " *Ashe v. Swenson,* 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970) (effect of prior acquittal) (quoting Mayers & Yarbrough, Bis Vexari: *New Trials and Successive Prosecutions,* 74 HARV.L.REV. 1, 39 (1960)). As *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951), required, the MSPB presiding official examined the record of the prior trial in detail to see if the judge might have disbelieved some aspects of the acts charged. *See* App. 71. The MSPB examination was not to be "hypertechnical," but to be conducted "with realism and rationality." *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194. The only grounds the judge at the criminal trial had for doubting the government's version of events was Otherson's cross-examination, which made general attacks on the witnesses' credibility. The MSPB official concluded that the judge must have found the government's witnesses credible, and thus that "it was necessary and essential for the court to find that the defendants did commit the acts listed in the pleadings." App. 71. We find this conclusion to be perfectly reasonable and thus

reject Otherson's contention that the general verdict at the criminal trial did not necessarily determine against him the facts preclusively established at the MSPB hearing.

B. *Actually Litigated*

 Otherson next contends that, because the criminal trial was conducted on the basis of a stipulated record, the issues were not actually litigated. His contention, however, misconstrues the sort of stipulations that bring issues outside the actual litigation requirement. Generally speaking,[6] when a particular fact is established not by judicial resolution but by stipulation of the parties, that fact has not been "actually litigated" and thus is not a proper candidate for issue preclusion.[7] *See Sekaquaptewa v. MacDonald,* 575 F.2d 239, 247 (9th Cir.1978); *Anderson, Clayton & Co. v. United States,* 562 F.2d 972, 992 (5th Cir. 1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978); *Red Lake Band v. United States,* 607 F.2d 930, 934, 221 Ct.Cl. 325 (Ct.Cl.1979) (alternative holding); *cf. United States v. International Building Co.,* 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953) (consent judgment); *Tutt v. Doby,* 459 F.2d 1195, 1199–200 (D.C.Cir.1972) (default judgment). The reasoning behind this rule is apparent from the Restatement's articulation of the actual litigation requirement:

> The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in

---

**6.** Preclusion is appropriate when the stipulation clearly manifests the parties' intent to be bound in future actions. *See Red Lake Band v. United States,* 607 F.2d 930, 934 (Ct.Cl.1979); RESTATEMENT (SECOND) OF JUDGMENTS § 27 comment e.

**7.** Under the doctrine of claim preclusion (res judicata), by contrast, even issues determined

by stipulation may not be reopened in later actions upon the same claim. *See Williamson v. Columbia Gas & Electric Corp.,* 186 F.2d 464 (3d Cir.1950), *cert. denied,* 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951); *cf. Kaspar Wire Works, Inc. v. Leco Eng'g and Mach.,* 575 F.2d 530, 536–37 (5th Cir.1978) (dictum) (consent judgment).

an action would be narrowed by stipulation, and thus to intensify litigation.

RESTATEMENT (SECOND) OF JUDGMENTS § 27 comment e.

 Otherson, however, did not stipulate to the truth of the government's allegations. He simply stipulated that the government's witnesses would testify in the second trial as they had at the first. When a stipulation merely helps to shape the record a factfinder will use to determine the truth of a fact, rather than to establish the truth of the fact itself, that fact may be preclusively established in a later trial if the other requirements for issue preclusion are met. *See Fairmont Aluminum Co. v. Commissioner,* 222 F.2d 622 (4th Cir.), *cert. denied,* 350 U.S. 838, 76 S.Ct. 76, 100 L.Ed. 748 (1955). Otherson contested the allegations against him through his attorney's cross-examination, and the parties left it to the trial judge to evaluate the witnesses' testimony and determine whether the government established its allegations beyond a reasonable doubt. Therefore, the factual basis of the charges was actually litigated and those facts are appropriate for issue preclusion at later proceedings.[8]

### C. *Incentive to Litigate*

 Fears that a party might have litigated less than fully because the stakes in the first action were low in relation to those in the second inhere in the justification for not preclusively establishing issues not actually litigated. *See Tutt v. Doby,* 459 F.2d 1195, 1200 (D.C.Cir.1972) (incentive-to-litigate problems in default judgments); *Red Lake Band v. United States,* 607 F.2d 930, 934–35, 221 Ct.Cl. 325 (Ct.Cl.1979) (lack of incentive to litigate a factor in affording no preclusive effect to issues resolved by stipu-

---

**8.** We note that, in reaching this holding, we need not take sides in the dispute over whether facts established at a criminal trial by a defendant's guilty plea are actually litigated for purposes of issue preclusion. At least seven circuits have distinguished facts resolved by guilty plea from those resolved by stipulation and held that the former may be preclusively established at later trials. *See infra* note 11. For the most part, these cases rely on the requirement of Federal Criminal Procedure rule 11(f) that courts shall not enter judgment on a guilty plea "without making such inquiry as shall satisfy it that there is a factual basis for the plea." Fed.R.Crim.P. 11(f). For this reason, they argue, a defendant who pleads guilty does not save the court as much work as does a party who stipulates to the truth of a fact in a civil trial, and the facts underlying a guilty plea are more reliable than those established only by stipulation. The Supreme Court appears recently to have rejected this view in an alternative holding in *Haring v. Prosise,* —— U.S. ——, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983). The Court held that Prosise, after pleading guilty to criminal charges, was not precluded from bringing a § 1983 suit against police officers for alleged violations of his civil rights that occurred during the search that gave rise to his arrest. One of the three reasons the Court gave was that "the legality of the search ... was not actually litigated in the criminal proceedings. *Indeed, no issue was 'actually litigated' in the state proceeding since Prosise declined to contest his guilt in any way."* *Id.* at ——, 103 S.Ct. at 2374 (emphasis added). This view supports that of other judges and commentators, who insist that issues resolved by guilty plea are not always appropriate for issue preclusion. *See Meadows v. Evans,* 550 F.2d 345, 345 (5th Cir.) (Goldberg, J., concurring and dissenting in part), *cert. denied,* 434 U.S. 969, 98 S.Ct. 517, 54 L.Ed.2d 457 (1977); *Teitelbaum Furs, Inc. v. Dominion Ins. Co.,* 58 Cal.2d 601, 606–07, 375 P.2d 439, 441, 25 Cal.Rptr. 559, 561 (1962) (Traynor, J.); 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.418[1], at 2706–08 (2d ed. 1982); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4474, at 759–61 (1981). The opponents of preclusion for guilty pleas say a defendant who pleads guilty in no way contests the facts, so they are not actually litigated, and there is a danger that defendants plead guilty to minor crimes simply to avoid the trouble of fully litigating them. The Supreme Court had previously offered support for this minority view only in dictum in *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 157, 83 S.Ct. 554, 561, 9 L.Ed.2d 644 (1963). Although the passage from *Prosise* quoted *supra* categorically adopts this view, that case may not finally settle the question because the Court's statement was offered without citation and was broader than needed to decide the issue before it. *See infra* note 11.

The present case is very different from these guilty-plea cases, in which the only factual inquiry is that required under rule 11(f). Because Otherson subjected the government's witnesses to cross-examination, and because the judge was required to find the allegations against Otherson true beyond a reasonable doubt, the actual litigation of issues in this case far exceeded any that might take place when a judge accepts a guilty plea.

lation); *Bloor v. Chase Manhattan Mortgage and Realty Trust,* 511 F.Supp. 12, 16 n. 3 (S.D.N.Y.1979) (incentive to litigate questionable in suit resolved by consent decree); RESTATEMENT (SECOND) OF JUDGMENTS § 27 comment e (party may choose not to raise an issue because the "action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit"). Courts, however, have considered potential unfairness from a lack of incentive to litigate even when some litigation actually took place in the first trial. *See Berner v. British Commonwealth Pacific Airlines, Ltd.,* 346 F.2d 532, 540 (2d Cir. 1965) (among other considerations), *cert. denied,* 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966); *Spilker v. Hankin,* 188 F.2d 35, 39 (D.C.Cir.1951) (same). In the Restatement's formulation, lack of incentive to litigate is one consideration for possible exception from preclusion even in cases where the other requirements for preclusion are met. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 28(5)(c).

■ We now consider and reject two arguments that Otherson's lack of incentive to litigate fully in the first trial makes preclusion inappropriate even though the facts were contested and submitted for judicial determination. The first argument is that the stakes in the first trial were quite low in relation to the stakes at the MSPB hearing. Otherson was fined $1,000 and was at risk for only six months in jail, *see* App. 15. This is arguably much less than the stakes of a proceeding concerning a discharge from employment. Indeed, one circuit that has found preclusion generally appropriate for issues determined by verdicts entered upon guilty pleas has suggested that facts inhering in a guilty plea to a misdemeanor may not similarly be established preclusively in later trials. *In re Raiford,* 695 F.2d 521, 524 (11th Cir.1983). Yet Otherson's case is one good example of a defendant who took the first trial quite seriously even though he was at risk for only a small amount. *See Zdanok v. Glidden Co.,* 327 F.2d 944, 956 (2d Cir.) (defended first action with vigor, so preclusion appropriate in second action for much higher stakes), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). Although he did withhold some of his evidence, he obviously thought the charge a serious one, for he pursued his appeal on the legality of his conviction all the way to the Supreme Court. Therefore, preclusion is much more appropriate here than in a case where a defendant put up no resistance at all because the misdemeanor was too trivial to worry about.

A second argument for an exception to preclusion is that the bargain with the prosecution created an actual disincentive to litigate these particular issues, above and beyond the fact that Otherson was at risk for only a misdemeanor. Had Otherson insisted on presenting his full factual defenses to the allegations, he presumably would have faced felony charges rather than misdemeanors. In this respect Otherson's plight resembles that of the party sought to be bound in *Berner v. British Commonwealth Pacific Airlines, Ltd.,* 346 F.2d 532 (2d Cir.1965), *cert. denied,* 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966).[9]

---

**9.** In *Berner,* the first time a plaintiff brought a damage action in connection with a plane crash, the jury awarded him $35,000 of $500,-000 in damages sought. Had the defendant appealed and received a new trial, it would have been at risk for a much larger judgment. It was content instead to pay the relatively small sum of damages assessed and not to appeal. When a plaintiff in a second trial relating to the same crash attempted to use the first verdict to establish willful misconduct, the Second Circuit held preclusion inappropriate. The key reason was that the now-abandoned doctrine of mutuality—that a party not itself bound by a prior judgment could not preclu-

sively rely on that judgment—still reigned when the defendant made the decision not to appeal, though it was partly discredited by the time of the second trial. The defendant thus could not have anticipated the consequences of his decision not to appeal. Although the holding of *Berner* is thus distinguishable, the facts are similar in that both Otherson and the defendant in *Berner* arguably failed to proceed with full litigation for fear of being put at risk for still more serious consequences. (They are different, however, in that in *Berner* a litigant not a party to the first suit sought preclusion in the second.)

Although this contention merits serious consideration, we nonetheless find preclusion appropriate under the circumstances. We note first that preclusion is sought here by Otherson's adversary in the first trial, the federal government.[10] According to the Restatement's formulation, when preclusion is sought by a former adversary, and the other requirements for preclusion are met, courts should refuse to give the first judgment preclusive effect on grounds that the party lacked adequate incentive to litigate in the first proceeding only upon "a compelling showing of unfairness." Restatement (Second) of Judgments § 28 comment j. Even the fact that the first determination was "patently erroneous" is not alone sufficient. *Id. Compare id.* § 29 comment b

("When a non-party invokes issue preclusion, however, greater weight may be given to the factors stated in § 28 and additional considerations may indicate the inappropriateness of imposing preclusion."); *compare also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 330, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979) (listing possible lack of incentive to litigate as one special danger of "offensive" preclusion by one not a party to the first suit). The apparent justification for this formulation is that relitigation between the same two adversaries is more strikingly wasteful than relitigation between two different parties and that parties can most readily foresee, and expect to be subject to issue preclusion in, future suits involving a present adversary.[11]

**10.** When mutuality was still required, so that only parties to the first action or their privies could assert preclusion in the second action, the Supreme Court held that there was "privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government." *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 402–03, 60 S.Ct. 907, 916–17, 84 L.Ed. 1263 (1940).

**11.** If after *Haring v. Prosise,* —— U.S. ——, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), a live debate remains over the preclusive effect of guilty pleas, *see supra* note 8, a middle ground may be available by recognizing the distinction between preclusion invoked by a party or privy to the first action and preclusion invoked by a stranger to that action. Even if a court held that the rule 11(f) inquiry amounts to actual litigation, certain forms of plea bargaining might create disincentives to litigate similar to those we discuss with respect to Otherson. Accordingly, determining whether to give preclusive effect to such pleas might turn on factors similar to those relevant here, such as whether the government or another party seeks to invoke preclusion in the later action. In finding that the prior guilty plea did not bar litigation of the legality of the search, the Supreme Court in *Prosise* was clear that it regarded the police officer in the § 1983 action as a different adversary from the state prosecutor in the prior criminal proceeding. *See* —— U.S. at —— n. 10, 103 S.Ct. at 2375 n. 10 (discussing Virginia's doctrine of mutuality of estoppel). By the same token, most of the seven circuits we found to have given preclusive effect to guilty pleas did so when the federal government was a party in both the first and second

actions. In some cases, the government was enforcing at the second trial a form of civil relief arising out of the original crime, a claim that would presumably be barred the second time under claim preclusion were criminal courts not specialized tribunals, *see* Restatement (Second) of Judgments § 26(1)(c) & comment c. *See Ivers v. United States,* 581 F.2d 1362 (9th Cir.1978) (forfeiture action brought by United States following failure-to-declare-currency guilty plea); *United States v. Podell,* 572 F.2d 31 (2d Cir.1978) (United States imposing constructive trust after guilty plea to receiving bribes); *see also Alsco-Harvard Fraud Litigation,* 523 F.Supp. 790, 800–02 (D.D.C. 1981) (False Claims Act action brought by United States after guilty plea to fraud against the government). In others, the government was a party to the second action, though that action was not so closely related to the first. *See Hernandez-Uribe v. United States,* 515 F.2d 20 (8th Cir.1975) (United States brings criminal alien reentry case after guilty plea to earlier deportation action), *cert. denied,* 423 U.S. 1057, 96 S.Ct. 791, 46 L.Ed.2d 647 (1976); *Plunkett v. Commissioner,* 465 F.2d 299 (7th Cir.1972) (guilty plea to tax evasion used in later civil fraud action); *United States v. Accardo,* 113 F.Supp. 783 (D.N.J.) (prior guilty plea to operating an unregistered still used in later action by United States for fraud in obtaining naturalization), *aff'd per curiam,* 208 F.2d 632 (3d Cir.1953), *cert. denied,* 347 U.S. 952, 74 S.Ct. 677, 98 L.Ed. 1098 (1954). As the Second Circuit stated the rule, a prior guilty plea "constitutes estoppel *in favor of the United States* in a subsequent civil proceeding." *United States v. Podell,* 572 F.2d 31, 35 (2d Cir.1978) (emphasis added). Only two of the seven circuits found preclusion appropriate in a later action involving a new party. *See In re Raiford,* 695 F.2d 521 (11th Cir.1983) (bankruptcy trustee uses

Under the circumstances we think there is no great unfairness in holding Otherson to the determinations from his prior criminal conviction. Even without the full evidentiary presentation Otherson made at the felony trial, the misdemeanor conviction does provide an extra margin of reliability that dispels some of the worries about using the conviction at the MSPB hearing. The court found Otherson guilty beyond a reasonable doubt. It did so after considering the testimony of witnesses subjected to full cross-examination. Given that the government must prove misconduct at the MSPB hearing by a mere preponderance of the evidence, it is not likely that preclusive use of the conviction will work an unfairness at the later hearing.

IV

██ Finally, Otherson argues that discharge was an inappropriate punishment for his misconduct. At his hearing he named two other agents who previously mistreated aliens but were not removed. Otherson believes this shows he was discharged not because his conduct warranted such a serious penalty but because the agency wanted to calm the political turbulence caused by prior examples of mistreatment that had gone unpunished.

This contention is patently frivolous. We have explained before that a reviewing court will not set aside a punishment for employee misconduct unless it is so excessive that it amounts to an abuse of the agency's discretion. *Gipson v. Veterans Administration,* 682 F.2d 1004, 1011 (D.C. Cir.1982). Far from being unwarranted, Otherson's punishment was eminently appropriate given the seriousness of his offense.[12] The other agents Otherson says were not discharged were also not criminally convicted, and their punishment could therefore have reasonably been less severe. We cannot find fault with the presiding official's analysis on this point:

> Border Patrol Agents, as law enforcement officials, occupy positions of trust and must uphold and obey the law at all times under difficult conditions. Any failure to obey the law while performing the duties of Border Patrol Agent reflects adversely on the agency. When the public knows or perceives that law enforcement officials do not obey the law, it must adversely affect the agency's public image, and thus, hinder the agency's ability to enforce the law. Therefore, the agency must take appropriate action to remedy that situation.

App. 74.

V

For the foregoing reasons, we deny Otherson's petition for review.

*It is so ordered.*

---

debtor's earlier guilty plea to fraud charges to deny debt discharge); *Metros v. United States District Court,* 441 F.2d 313 (10th Cir.1971) (later § 1983 action against police following guilty plea in state criminal action).

**12.** The Ninth Circuit's affirmance of Otherson's conviction gives some of the flavor of his merry escapade.

There was evidence to indicate that appellants' abuse of aliens in their custody was part of a deliberate plan or policy. In late June or early July, Border Patrol Agent Ronald Gamiere, who apprehended the red-shirted alien, overheard Brown, Otherson, and a third agent talking. One of them had asked "Who's the designated hitter?" or "Are you the designated hitter?" or a similar question. On July 3, before Otherson drove the red-shirted alien to Brown's location, the two appellants had a radio conversation in which Brown replied "Affirm" to Otherson's question, "Are you Delta Henry?" (In one version of the phonetic alphabet code used by Border Patrol agents, "Delta Henry" is equivalent to "DH"—letters with no legitimate meaning in Border Patrol parlance.) Later on July 3, while Otherson was taking the red-shirted alien from Brown's location to Dick's, he explained to trainee Freselli that "we find it necessary to do things like this because the criminal justice system doesn't do anything to these assholes."

*United States v. Otherson,* 637 F.2d 1276, 1278 (9th Cir.1980), *cert. denied,* 454 U.S. 840, 102 S.Ct. 149, 70 L.Ed.2d 123 (1981).