**SPAWR OPTICAL RESEARCH, INC., et al., Plaintiffs,**

v.

**Malcolm BALDRIGE, et al., Defendants.**

Civ. A. No. 86–0880.

United States District Court, District of Columbia.

Dec. 16, 1986.

Steven R. Perles, Scott C. Whitney, Washington, D.C., for plaintiffs.

Sandra M. Schraibman, Robert Wolff, Federal Programs Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

In this case, the Court must determine on cross-motions for summary judgment whether plaintiffs were deprived of their right to a proper administrative hearing for violations of the Export Administration Act of 1969, as amended, 50 U.S.C.A. app. §§ 2401 *et seq.* (1986). According to plaintiffs, the administrative process was flawed because an administrative law judge (ALJ) in a civil proceeding adopted certain facts stemming from their prior criminal conviction without an evidentiary hearing and because he did not allow them to present evidence on sanctions. For the reasons stated below, the Court concludes that plaintiffs' rights were not violated, and defendants' motion for summary judgment will therefore be granted, and that of plaintiffs will be denied.

### I

Plaintiffs were convicted in 1980 in the District Court for the Central District of California of exporting laser mirrors to the Soviet Union without a license,[1] and that conviction was affirmed. *United States v. Spawr Optical Research,* 685 F.2d 1076 (9th Cir.1982).[2]

---

1. Plaintiffs apparently illegally exported these laser mirrors on seven occasions, between June of 1976 and February of 1977.

2. Spawr Optical Research was found guilty on all 14 charges in the indictment. These charges were: misrepresenting shipment values in Shipper's Export Declarations submitted to the U.S. Customs Service in 1976 (counts 1 and 2) and 1977 (counts 3 through 6); conspiracy to export without a license (count 10); and exporting laser mirrors to Germany and Switzerland with the knowledge that the mirrors would be shipped to the Soviet Union without obtaining the required export license in 1976 (counts 7

On the basis of this conviction, a hearing commissioner of the Industrial Trade Administration of the Department of Commerce issued an order temporarily denying plaintiffs' export privileges. On May 1, 1981, the Department of Commerce's Office of Export Enforcement issued a "Charging Letter," which initiated administrative proceedings against plaintiffs for the same acts that had led to their conviction. For reasons that are unclear, these administrative proceedings languished until 1985, when the matter was referred to an Administrative Law Judge for further action.[3] The Temporary Denial Order was in force during the interim four years, and plaintiffs could not engage in export activity.

Plaintiffs requested a hearing before the ALJ, pursuant to section 13(c) of the Export Administration Act, 50 U.S.C.A. § 2412(c). The Department of Commerce moved for summary judgment before the ALJ on the ground that, because of the criminal convictions, plaintiffs were collaterally estopped from contesting the civil charges. The ALJ granted the summary judgment motion, and he denied plaintiffs' export privileges for a period of six years.[4] The decision was upheld by the Assistant Secretary for Trade Administration, who acted with the authority of the Secretary of Commerce.[5] The suit in this Court followed.

## II

■ The first issue raised by the papers is whether the Court has jurisdiction to review these claims, in view of a 1985 amendment to the Export Administration Act which provides in section 13(c) that the "order of the Secretary shall be final and is not subject to judicial review." 50 U.S.C.A. app. § 2412(c).

Defendants argue that this language is clear and that it unambiguously and *per se* deprives the Court of jurisdiction. The legal situation is somewhat more complex, however. The Supreme Court has often stated that judicial review should be presumed to be available, *see, e.g., Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), and that even compelling language will sometimes not preclude review if the statute's structure, history, or scheme casts doubt on the clarity of its words. *See Block v. Community Nutrition Institute*, 467 U.S. 340, 345, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1980). Indeed, the Supreme Court has recently implied, and other courts have held, that regardless of language that clearly attempts to preclude judicial review, such review is available to determine whether there has been "a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative determination.'" *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985); *see also Fitzgerald v. United States*, 623 F.2d 696, 699 (Ct.Cl. 1980).

There is no question but that section 13(c) precludes judicial review of the Secretary's decisions on civil penalties and sanctions, *see Dart v. United States*, C.A. No. 86–2264 (Oct. 8, 1986). As noted, on that

---

through 9) and 1977 (counts 11 through 14). Frances Spawr was found guilty on counts 1 through 6 and 10 through 14. Walter Spawr was found guilty on counts 10 through 14. *United States v. Spawr Optical Research, Inc.*, CR. 80–789 (C.D.Cal.1980).

The Spawrs and their company moved for reexamination of their convictions but on October 9, 1986, Judge William M. Byrne denied this motion. *United States v. Spawr Optical*, No. 85–3193 (C.D.Cal. Oct. 9, 1986).

**3.** In his Decision and Order, the ALJ pointed out that the events underlying these proceedings

occurred in 1976 and 1977. Noting that the Temporary Denial Order "lingered, unresolved" for almost five years, the ALJ said that "[t]he deplorable delay in processing this and too many other cases is ... unexplainable...." Decision and Order of the ALJ, 51 Fed.Reg. 7477 (Jan. 27, 1986).

**4.** *Id.*

**5.** Order of the Assistant Secretary, 51 Fed.Reg. 7481 (Feb. 26, 1986).

issue the statutory language is clear and compelling. Moreover, nothing in the Act's history or in the case law indicates that Congress did not mean what it said in that regard. In any event, the control of exports has traditionally been considered a subject that is entrusted exclusively to the political branches of government. *See Harrisiades v. Shaugnessy,* 342 U.S. 580, 589, 72 S.Ct. 512, 519, 96 L.Ed. 586 (1952).

But the issue here does not revolve around the substance of the law, but around the question whether, in plaintiffs' words, there was "a substantial departure from important *procedural* rights" (emphasis added), *i.e.,* the right to a hearing before the deprivation of export privileges. This is a matter with respect to which it is the Court's duty to review plaintiffs' claim, if only because that right is effectively granted by the same section 13(c) of the Export Act that precludes judicial review of decisions made after such a hearing, as follows:

> In any case in which a civil penalty or other civil sanctions ... is sought ..., the charged party is entitled to receive a formal complaint specifying the charges and, at his or her request, to contest the charges in a hearing before an administrative law judge ... Subject to the provisions of this subjection, any such hearing shall be conducted in accordance with sections 556 and 557 of [the Administrative Procedure Act] ... After the hearing, the administrative law judge shall make findings of fact and conclusions of law in a written decision,....

50 U.S.C.A. App. § 2412. Plaintiffs argue—by no means frivolously—that the summary adoption of findings of fact by the ALJ from their prior criminal conviction proceeding deprived them of this statutory right to present their case at a hearing. Were the Court to decline to reach the merits of this claim, it would grant the Secretary unlimited and unreviewable discretion to deny those crucial procedures that Congress has written into this Act. The Court declines so to construe the statute, and it concludes that it has jurisdiction to review plaintiffs' claim.

## III

Thus the fundamental question before the Court is whether in this case the Export Administration Act required a new evidentiary hearing before civil penalties were assessed against the plaintiffs, or whether, to the contrary, the ALJ acted properly in summarily adopting the facts brought out in the context of plaintiffs' prior criminal conviction, on a collateral estoppel (or issue preclusion) basis.

The leading case on this issue is *Otherson v. Department of Justice,* 711 F.2d 267 (D.C.Cir.1983), which involved the discharge by the Immigration and Naturalization Service of a border patrol agent after his criminal conviction for physically abusing aliens. When Otherson appealed his discharge, the Merit Systems Protection Board held that collateral estoppel prevented him from relitigating facts established at the criminal trial. The Board upheld the discharge, and the Court of Appeals upheld the Board's action. *Id.* at 278.

*Otherson* put to rest any doubt that, in this jurisdiction, issues determined in a criminal conviction may be accorded preclusive effect at a later administrative proceeding. *Id.* at 271; *accord Chisolm v. Defense Logistics Agency,* 656 F.2d 42 (3d Cir.1981). Under *Otherson,* such preclusive effect can be accorded "if the normal standards for preclusion are satisfied." *Otherson,* 711 F.2d at 271. These conditions are familiar. First, the identical issue must have been actually litigated—contested by the parties and submitted for determination by the prior tribunal. Second, the issue must have been necessary to the prior tribunal's determination. Third, preclusion in the second hearing must not be unfair; that is, the party to be bound must have had an incentive to litigate the issue in the prior hearing. *Id.* at 273. These requirements further the judicial interest in avoiding unnecessary litigation without unfairly depriving a person of his day in court. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,*

402 U.S. 313, 324–25, 91 S.Ct. 1434, 1440, 28 L.Ed.2d 788 (1971).

Within this general framework, plaintiffs assert in the instant case that they were deprived of their statutory right to a hearing before the ALJ on three issues. The first is whether the export of the laser mirrors in question constituted a threat to national security; the second, whether the mirrors were on a "control list" of items for which export licenses are necessary; and the third, the appropriateness of the sanction.

### A. *The "National Security" Issue*

The "national security" issue provides plaintiffs with their main argument, and it is one that at first blush has the greatest appeal. According to plaintiffs, the ALJ denied their export privileges because their actions posed a threat to national security. They go on to say that, since it was clear that a threat to national security did not form the basis for their criminal convictions, the ALJ was denying them the right ever to present evidence on the national security issue.

Viewed from one perspective, plaintiffs are correct: their criminal conviction was not based upon any finding that the unlicensed exports constituted a threat to national security, a matter which, incidentally, the Commerce Department now concedes. Defendants' Opposition to Plaintiffs' Motion for Summary Judgment at 22. Indeed, at their criminal trial the Spawrs stipulated that no finding of a threat to national security was required for conviction.[6] In order to convict, the government merely needed to prove that the laser mir-

rors exported by the Spawrs and their company were "used for the benefit" of the Soviet Union.[7] In the face of this record in the criminal case, if the ALJ based the imposition of civil sanctions upon his own factual finding that these exports threatened national security, without affording plaintiffs the opportunity to contest the matter, then plaintiffs would indeed have been deprived of their right to an appropriate hearing under the Export Act, *see* 50 U.S.C.A. app. § 2412(c),[8] in violation also of traditional principles of due process, *see* *Goldberg v. Kelly*, 397 U.S. 254, 268, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970) (due process includes effective opportunity to present own arguments and evidence).

▬ But the fact is that the civil sanctions recommended by the ALJ were no more grounded in a finding of a threat to national security than were the criminal convictions. No showing of such a threat is necessary either to criminal or to civil penalties under the Export Act. True, the ALJ did mention "national security" in his order depriving plaintiffs of their export privileges; this is hardly surprising, given the fact that one of the congressionally-declared policies of the Export Act is to "further the sound growth and stability of its [the United States'] economy as well as further its national security and foreign policy objectives." 50 U.S.C.A. app. § 2402(4). But the ALJ did not base the imposition of sanctions against the Spawrs upon any showing or finding of a threat to national security. To the contrary; the ALJ specifically, and quite properly, reject-

---

**6.** One of the grounds for plaintiffs' motion to reconsider their convictions was that their counsel was willing to stipulate that a lesser burden of proof would suffice to convict his clients. In denying that motion, Judge Byrne stated that these particular contentions had "little merit." *United States v. Spawr Optical Research, Inc.*, No. 85–3193, slip op. at 10 (C.D.Cal. Oct. 9, 1986).

**7.** Judge Byrne explicitly resolved this dispute over the proof required for conviction. For example, when the prosecutor brought up the question of the effect of these exports on national security, Judge Byrne stated that "[t]his case

wasn't tried on that basis, ... All that had to be proved and all this jury was asked to establish was it was of some benefit [to the Soviet Union]...." Transcript of Sentencing Proceeding at 21, *United States v. Spawr Optical Research, Inc.*, CR. 80–789 (C.D.Cal.1980).

**8.** Section 2412(c) provides that hearings must be held in accordance with sections 556 and 557 of the Administrative Procedure Act, which allows a party "to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, ... as may be required for a full and true disclosure of the facts."

ed the Spawrs' contention that the Commerce Department was required to show that the exports threatened national security:

> They [plaintiffs] claim that ... any Denial Order must be linked to the national security [or] foreign policy objectives of ... the Act ... They argue that the "necessary" statutory elements referred to above were not established at the criminal trial and, therefore, the matter is still open for determination ... This tribunal is not the proper forum before which to address the validity of the regulations ... The evaluation that the export of a commodity constitutes a national security threat is part of the process in which criteria are generated to identify exportable from non-exportable products to particular countries.

51 Fed.Reg. at 7477–78.[9] It is of course elementary that, if the ALJ never based his ruling on a threat to national security (and was not required to do so, *see infra* ), plaintiffs must fail in their argument that he improperly denied them a hearing on that subject.

It is likewise clear that the imposition of the civil sanctions in question here may be imposed without any finding that the respondent's actions constituted a threat to national security. Civil penalties are imposed pursuant to 50 U.S.C.A. app. § 2410(c) which prescribes that the Secretary may impose such a penalty for each violation of the Act, and the Act is violated by anyone who "knowingly violates or conspires to or attempts to violate any provision of this Act ... or any regulation, order, or license issued thereunder," shall be fined or imprisoned. 50 U.S.C.A. app.

§ 2410(b). Thus, the statute requires proof of only two elements—that the individual involved (1) exported a commodity (*e.g.*, laser mirrors) in violation of the Act or the regulations, and (2) that he did so knowingly.

At least one decision explicitly supports this view, and none has been found to contradict it. In *United States v. Moller-Butcher*, 560 F.Supp. 550 (D.Mass.1983), defendants alleged that in order to sustain a criminal conviction under the Export Act, the government must prove not only that the goods in question were on the "control list" of illegal exports, but also that they "would make a significant contribution to the military potential of any other country or combination of countries which would prove detrimental to the national security of the United States." *Id.* at 552. Like plaintiffs in the instant case, defendants in *Moller-Butcher* gleaned this language from the Act's declaration of policy. *See* 50 U.S.C.A. app. § 2402(2)(A). The court rejected this argument:

> Nowhere is the "significant contribution" standard listed as an essential element of a crime under the Act ... By alleging that defendants had the requisite knowledge and that they shipped the equipment without a license in violation of regulations, the indictment states all the elements of the crime set forth in the statute and regulations thereunder ... That the goods make a significant contribution to the military potential of another country was decided by the Secretary of Commerce when he placed them on the [control list]....

The Court cannot help but observe that the changing by plaintiffs or their counsel of the phrase "national interests" to "national security" smacks of bad faith, since it is precisely plaintiffs' primary argument in this proceeding that the ALJ improperly denied their export privileges on the grounds that their actions threatened national security. Because it is impossible to know whether the misquote was deliberate, the Court will not impose sanctions.

---

**9.** In their briefs, plaintiffs argue that the ALJ admonished them for displaying "a contemptuous disregard for the statute and regulations *designed to protect national security.*" Memorandum in Opposition to Defendants' Motion to Dismiss and Alternative Motion for Summary Judgment at 4 (emphasis in original). (This language is excerpted from what plaintiffs refer to as the ALJ's "unsupported tirade." Memorandum in Opposition at 4.) However, actually the ALJ admonished plaintiffs for their disregard of a statute "designed to protect national *interests.*" 51 Fed.Reg. at 7478 (emphasis added).

*Moller-Butcher,* 560 F.Supp. at 552–53; *see also United States v. Ramirez-Preciado,* 747 F.2d 273, 276 (5th Cir.1984); *United States v. Spawr Optical Research, Inc.,* No. 85–3193, slip op. at 12–13 (C.D.Cal. Oct. 9, 1986) (order denying section 2255 petition).

In short, plaintiffs' argument misses the basic structure of the statutory scheme. Under the Act, the Secretary of Commerce has discretion to implement the statute's purposes, including that of protecting national security. In the exercise of his responsibilities, he compiles a list of goods for which a license is required as a prerequisite to export to particular countries. While in so doing, the Secretary is presumably effectuating the policies underlying the statute, this does not mean that these policies become elements of the individual offense or of the civil determination the Secretary makes.[10]

### B. *Placement of Laser Mirrors on the "Control List"*

 Plaintiffs apparently argue next that they were deprived of any opportunity to present evidence that the laser mirrors were not included in the Secretary's control list of illegal unlicensed exports.[11] Thus, the question is whether the ALJ was right in according preclusive effect to the criminal court's conclusion that the laser mir-

rors exported by plaintiffs were included on the Control List of prohibited exports. In order to make a determination on this issue, the Court must briefly revisit the three preconditions to application of collateral estoppel.

First, plaintiffs clearly had every incentive to litigate this issue at their criminal trial. Facing criminal charges for illegal exports, the Spawrs and their company obviously would have benefited by proving that their exports were not illegal at all because the laser mirrors were not on the list of prohibited exports. Consequently, preclusion at the administrative proceeding did not work an unfairness to plaintiffs. Second, a finding whether the laser mirrors were in fact included on the list of banned exports was obviously necessary to the criminal conviction in the Central District of California. The third and remaining question is whether the question of inclusion on the Control List was actually litigated at the criminal trial, and the answer must clearly be in the affirmative. As already stated, one of the two elements the government must prove in order to make out a violation of the Export Act in a criminal case is that the plaintiffs exported goods in violation of the Act. Essential to that determination is a showing that export of the particular goods was illegal, and that

10. Defendants' argument here is analogous to one by a defendant in a drug possession case that his conviction cannot stand because no specific showing has been made that the drug is a threat to society. In drawing up a list of controlled substances, Congress or local governments will already have determined that the drug in question, say cocaine, poses a threat to public safety or the general welfare. Congress may even have included such a determination in a statement of policy introducing the drug laws. *See* 21 U.S.C. § 801(2) ("The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people."). However, a showing that the drug possessed by the individual defendant has a "detrimental effect on the general welfare" does not thereby become an element of the offense. *See, e.g., United States v. Vergara,* 687 F.2d 57 (5th Cir.1982) (listing three elements of offense under 21 U.S.C. § 841, but not including "detrimental effect on general welfare").

11. Plaintiffs' briefs are vague and incomplete as to their theory on this point. In their Statement of Material Facts as to Which There is No Genuine Issue, plaintiffs state that "The Commodity Control List has never contained an explicit prohibition of export of the subject laser mirrors without a license...." Since this entire case presents a dispute with the ALJ's adoption of findings from the criminal trial, the Court will view this particular contention within that context: that is, did the ALJ improperly give preclusive effect to a finding by Judge Byrne, in the criminal case, that export of these laser mirrors was prohibited by the Control List? To the extent that plaintiffs take issue with their defense counsel's failure *at the criminal trial* to argue that the laser mirrors were not even on the Control List, that is a matter properly raised in a motion to reconsider plaintiffs' conviction in the Central District of California. As already discussed, that motion has been denied.

means that they were included on a list of illegal exports.

Moreover, the Court of Appeals for the Ninth Circuit, which reviewed and affirmed plaintiffs' criminal convictions described in the case before it as appeals from "convictions resulting from their unlicensed export of laser mirrors...." *United States v. Spawr Optical Research, Inc.*, 685 F.2d 1076, 1078, 1080 n. 7 (9th Cir.1982). Here again, the plaintiffs could be convicted of the "unlicensed export" of goods only if a license was required, and a license would have been required only if the goods were on a control list of illegal exports.

As the leading commentators on civil procedure have explained, collateral estoppel "applies to any issue framed by the pleadings and not withdrawn, even though it has not been raised at trial in any way." C. Wright & A. Miller, *Federal Practice and Procedure* § 4419 (citing *United States v. Silliman*, 167 F.2d 607 (3d Cir.1948)).[12] The issue of the presence of the laser mirrors on the control list was plainly framed by the indictment handed down against the Spawrs and their company.[13]

In this case, the requirements that an issue be "actually litigated" and that it be "necessary to the prior court's determination" are so closely intertwined on the record both were met. Such a conclusion is more than adequately supported by case law, *see McCord v. Bailey*, 636 F.2d 606, 608 (D.C.Cir.1980) (collateral estoppel prohibits relitigation of matters "which were, or necessarily must have been, determined in the first litigation"), and it is fully justified by the policies of collateral estoppel.

The Supreme Court said in *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970), "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Id.* And as the Ninth Circuit similarly noted, when applying collateral estoppel, the "[n]ecessary inferences from the judgment, pleadings and evidence will be given preclusive effect." *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1518 (9th Cir.1985). Finally, when considering the application of collateral estoppel the Court must keep in mind the policies underlying the rule:

> [A] party who has had one fair and full opportunity to prove a claim and has failed in that effort, should not be permitted to go to trial on the merits of that claim a second time. Both orderliness and reasonable time savings in judicial administration require that this be so unless some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a particular case.

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 324–25, 91 S.Ct. 1434, 1440, 28 L.Ed.2d 788 (1971).

From what has been said, it follows that the plaintiffs' second argument likewise fails to support a reversal of the agency order.

### C. The "Sanctions" Issue

■ Plaintiffs' third argument is the simplest to resolve. Plaintiffs contend that

---

12. The Court need not find that this issue was litigated in the sense that briefs were filed and witnesses called, any more than it would have to find that, in a robbery case, the parties "actually litigated" the issue whether or not robbery was on a list of prohibited offenses, or that, in a drug distribution case, the parties "actually litigated" whether heroin was on a list of controlled substances. The record of the criminal trial was not submitted to this Court by either party but, for the reasons detailed above, its absence is immaterial.

13. Among other things, the indictment charged the Spawrs with violating export administration

regulations as authorized by the Export Administration Act, the Trading with the Enemy Act, 50 U.S.C. app. § 5(b), and by Executive Order No. 11940, 3 C.F.R. § 150. If the Spawrs had a legitimate argument to make that their laser mirrors were not included in the Control List, they certainly had the most powerful incentive to raise the issue in the criminal trial as well as at the administrative level. In fact, the ALJ had to chide the Spawrs because they "failed to list the issues deemed appropriate for consideration" at their requested evidentiary hearing. *In re Spawr*, No. 613 (Dept. of Commerce, Oct. 2, 1985) (order).

the ALJ improperly deprived them of the right to present evidence on the issue whether any sanction beyond the Temporary Denial Order would be appropriate.[14] This argument is incorrect as a factual matter. On October 17, 1985, the Department of Commerce filed its proposed order for sanctions. Plaintiffs filed a reply to the proposed order, and sought to have the order stricken. They also filed some 1500 pages of appendices that set forth the factual evidentiary basis for their opposition to the sanctions. In light of that history, plaintiffs' contention that they had no opportunity to present evidence on the sanctions issue is frivolous.

For the reasons stated, plaintiffs' motion for summary judgment will be denied, defendants' motion for summary judgment will be granted, and the action will be dismissed with prejudice.

---

14. For example, plaintiffs say they were denied the opportunity to present evidence of "established agency practice concerning duration and scope of sanctions for similar offenses," and evidence of the severity of a civil sanction imposed on a coconspirator. Plaintiffs' Reply Memorandum at 9–10.