**Francis X. McLAUGHLIN, Appellant,**

**v.**

**Miles F. ALBAN, Jr., Appellee.**

**No. 84–5751.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 17, 1985.

Decided Oct. 25, 1985.

As Amended Nov. 15, 1985.

Thomas V. Moore, Riverdale, Md., with whom Francis X. McLaughlin, Kensington, Md., was on brief, for appellant.

Hugh E. Donovan, Silver Spring, Md., for appellees.

Before BORK and SCALIA, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion PER CURIAM.

PER CURIAM.

An information for perjury was prosecuted against the appellant McLaughlin, a Maryland attorney, in Florida state court. The appellee Alban, a member of the Office of Criminal Intelligence and Organized Crime, an investigatory agency under the Montgomery County Police Department in Maryland, first uncovered some apparently incriminating documentary evidence against McLaughlin in a broad investigation of organized crime. The evidence suggested that McLaughlin had perjured himself in a Florida probate proceeding involving the estate of George Preston Marshall, Jr., where the court set aside a will because McLaughlin had exerted "undue influence" over the testator. Specifically, the evidence uncovered by the Montgomery County Police indicated that McLaughlin had taken part in financial dealings with one of the witnesses to the will, Steeves, despite McLaughlin's avowal to the contrary in the probate proceeding. Alban sent the evidence, along with a letter signed by Sergeant Stanley Michaleski, the Officer-in-Charge of the Office of Criminal Intelligence, Montgomery County Police Department, stating it "may constitute perjury," to police officials in Broward County, Florida. The Florida authorities charged McLaughlin with perjury and had him extradited. After McLaughlin's arrest, release on bond and trial, the Florida court acquitted him of the perjury charge.

In early 1979, McLaughlin launched what became a repetitive, six-year campaign of litigation against Alban and numerous others linked to the investigation. He and his wife first filed suit on four common-law and constitutional tort claims in the Circuit Court for Montgomery County, Maryland. (*McLaughlin, et ux. v. Alban, et al.*, Law No. 51047). In 1981, he filed new complaints of seven common-law and constitutional counts in an amended Declaration in the Maryland Circuit Court, in the United States District Court for the District of Columbia (*McLaughlin, et ux. v. Cheshire, et al.*, Civ. No. 81–779, the present case), and in the United States District Court for the District of Maryland (*McLaughlin, et ux. v. The Washington Post, et al.*, Civil Action No. M–81–779). With the sole exception of the different defendants named in different courts, these three complaints were identical. In 1984, he filed yet a fourth lawsuit, with essentially the same claims, in the United States District Court for the District of Columbia. (*McLaughlin v. Benjamin C. Bradlee, et al.*, Civ. No. 84–1776). In each suit he alleged a broad conspiracy to violate his rights through the perjury prosecution, and named numerous other investigators and private parties associated with the investigation, including the *Washington Post*, as codefendants. While the decisions here and in the other case in the District of Columbia are now on appeal, all courts have so far decided against McLaughlin on every count. Prior to trial in the instant case, Judge Gesell dismissed all McLaughlin's claims except that part of Count VII against Alban which alleged constitutional violations under 42 U.S.C. § 1983 (1982) on the basis of theories of false imprisonment and malicious

prosecution. (Memorandum and Order, June 2, 1983, in Appellee's Brief App. 72). Following trial, the court orally granted a directed verdict in favor of the defendant. (Record Excerpts 7). McLaughlin now appeals that ruling.

██ Despite the extensive litigation which preceded the trial, neither claim preclusion nor issue preclusion appears to prevent consideration of the merits. The decisions of the United States District Court for the District of Maryland (Appellee's Brief App. 84) and of Judge Richey in the second suit in this court cannot themselves be given preclusive effect, since they relied wholly on the preclusive effect of decisions by the trial court in the instant case and by the Maryland Circuit Court. Any assessment of the preclusive effect the Maryland judgment might have here must apply the Maryland law of preclusion. *See Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 95–96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Maryland courts have prescribed claim preclusion only when the previous judgment with respect to the claim was "on the merits." *See Annapolis Urban Renewal Authority v. Interlink, Inc.,* 43 Md.App. 286, 405 A.2d 313, 316–18 (1979); *MPC, Inc. v. Kenny,* 279 Md. 29, 32, 367 A.2d 486, 489 (1977). Here the Maryland trial court dismissed Count VII against Alban on the grounds that the Florida probate proceeding at issue was outside that court's jurisdiction. *See* Letter from McLaughlin, Sept. 18, 1985, at Exhibit I. Under the Maryland law of claim preclusion this was not a disposition on the merits. *See Annapolis Urban Renewal Authority v. Interlink, Inc.,* 405 A.2d at 318. Similarly, although the law of issue preclusion is less clear in Maryland, courts have required that the initial judgment with respect to an issue be "on the merits," *see Washington Suburban Sanitary Commission v. TKU Associates,* 281 Md. 1, 19, 376 A.2d 505, 514 (1977), or that the issue be "actually litigated," *see MPC v. Kenny,* 279 Md. at 32, 367 A.2d at 489. While the record before us is sketchy, it suggests

that the specific issue of Alban's actions and motivation was not actually litigated in the Maryland proceedings.

██ Although preclusion does not apply, the merits of the case McLaughlin makes on appeal here lack even the substance of his prior claims. Our approach to the trial court decision, of course, must be informed by deference to factual findings that are not clearly erroneous. McLaughlin's arguments on appeal focus solely on the factual findings of the trial court. To dispute them, he offers only assertions that contradict the trial record, and far-fetched theories without evidentiary support. The element of proximate causation necessary to establish the constitutional tort under § 1983, *see Carey v. Piphus,* 435 U.S. 247, 257–58, 98 S.Ct. 1042, 1048–49, 55 L.Ed.2d 252 (1978); *Arnold v. IBM,* 637 F.2d 1350, 1355 (9th Cir.1981), appears entirely absent. As the trial court noted (Record Excerpts 10), McLaughlin has provided no evidence to contradict the strong presumption the case law prescribes in favor of an independent investigation of the matter by Florida authorities. *See Arnold v. IBM,* 637 F.2d at 1357; *Dellums v. Powell,* 566 F.2d 167, 192–93 (D.C.Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). Indeed, the evidence in the record, including excerpts from the record of the Maryland proceedings which McLaughlin cites as evidence to the contrary, indicates that the Florida State's Attorney directed his investigators "to get certified copies" of the allegedly incriminating "documents" (RE–30) and they already had "other information" and "were looking at more than a perjury charge when … this [perjury information] came together." RE–27. The Florida authorities "were satisfied that if they got the certified copies of the documents, that was sufficient" to support the filing of the information. RE–30.

██ Moreover, Alban clearly met the objective test of good faith which this Court, following *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), now applies for qualified immunity of offi-

cials under 42 U.S.C. § 1983. *See McSurely v. McClellan,* 697 F.2d 309, 316 (D.C.Cir. 1982). As the trial court stressed (Record Excerpts 8–9), the reasonableness of Alban's belief on the basis of the documentary evidence, the impartial, nonmalicious character of his communications with Florida authorities, and his undisputed cooperation with and supervision by other officials in Montgomery County appear completely sufficient to support the inference of good faith. Although he lied once to security guards about the purpose of an entirely legal surveillance that took place during his investigation (Transcript 112), that act, as revealed in the record, amounted to an innocuous detail of the operation. His failure to interview one potential suspect or to give credence to the statement of another, and his combative statements on the witness stand in defense of his actions, hardly place the objective inference at issue. The argument that Alban sent the evidence to Florida to discredit accusations McLaughlin had made against the *Washington Post* appears at best a wildly speculative interpretation of the evidence. These are the very "bare allegations of malice" that the qualified immunity standard of *Harlow* is designed to forestall. 457 U.S. at 817–18, 102 S.Ct. at 2737–38.

█ To establish a case under 42 U.S.C. § 1983, McLaughlin was required to show not merely a mistaken prosecution or even a common law tort, but the violation of a constitutional right. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Landrigan v. City of Warwick,* 628 F.2d 736, 744–45 (1st Cir.1980). There is no question that he failed to do so. We affirm the ruling of the District Court. The appeal of that ruling, especially after the long history of unsuccessful claims based on similar facts, was not only frivolous but irresponsible. Such harassment by litigation, regardless of its motivation, constitutes an abuse of the appellate process and should not be allowed to burden Alban further. We therefore are strongly moved to exercise our discretion to impose sanctions on McLaughlin for all fees and costs on appeal. 28 U.S.C. § 1912 (1982); F.R.

A.P. 38. *See Bank of Canton v. Republic National Bank,* 636 F.2d 30, 31 (2d Cir. 1980); *Browning Debenture Holders' Committee v. DASA Corp.,* 605 F.2d 35, 40–41 (2d Cir.1979). However, because the district court did not impose any sanctions in the first place, we reluctantly withhold sanctions in this court at this time.