**Francis X. McLAUGHLIN, Appellant,**

v.

**Benjamin C. BRADLEE, et al.**
(Two Cases)

Nos. 85–5245, 85–5702.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 25, 1986.

Decided Oct. 21, 1986.

As Amended Oct. 21, 1986.

Stephen L. Braga, with whom Herbert J. Miller, Jr., Washington, D.C., was on brief for appellant in Nos. 85–5245 and 85–5702.

Gerson A. Zweifach, with whom William E. McDaniels, David E. Kendall and Kevin T. Baine, Washington, D.C., were on brief for appellees, Benjamin C. Bradlee, et al., in No. 85–5245.

Hugh E. Donovan, with whom David A. Levin, Silver Spring, Md., was on brief for appellees, Miles F. Alban, Jr., et al., in Nos. 85–5245 and 85–5702.

Before EDWARDS, BORK and BUCK-LEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

This appeal represents the last of four extensive civil suits filed to challenge essentially the same activities taken by governmental officials in Maryland and Florida and by *The Washington Post* and several of its employees. It is clear to us that this latest suit should never have been brought. We hold that prior judgments preclude all matters that the appellant has not already conceded, and that the district court properly imposed sanctions of fees and costs on the appellant for pursuing this litigation. We therefore affirm.

### I.

The repetitive litigation that has culminated in this case focuses on a series of investigations by Maryland and Florida authorities and by employees of appellee *The Washington Post* in the late 1970's. Appellee Maxine Cheshire, a *Post* reporter, first learned about appellant McLaughlin, a Maryland attorney, in the course of investigations into possible connections between House of Representatives Speaker Thomas P. O'Neill and Tongsun Park, a Korean national who was once the subject of investigation and indictment by the federal government. Around late 1977, Cheshire shifted the focus of her investigation to the links between McLaughlin and O'Neill through their participation in an Irish fishing company. Directing her investigation to Montgomery County, Maryland, the county of residence for McLaughlin, O'Neill, and several others involved in the company, she met with members of the Montgomery County Police Department, among them the appellee Miles F. Alban, Jr. and his superior, appellee Stanley Michaleski. Subsequent to these meetings, Michaleski, Alban, and other Montgomery County investigators initiated their own investigation into McLaughlin's activities. Over the course of this investigation, Alban and Cheshire communicated with each other on several occasions. During trial proceedings prior to this case, Alban conceded that he divulged information about his investigation to Cheshire. *See* Appellant's Record Excerpts at 57–58.

The investigations failed to show a direct link between McLaughlin and either Park or O'Neill, and *The Post* refrained from publishing a story based on Cheshire's findings. The Maryland investigators nonetheless discovered evidence that suggested McLaughlin himself had engaged in fraudulent business activities on several occasions. In addition to other instances of potentially criminal activity, they found documents indicating that McLaughlin might have perjured himself in a Florida probate proceeding. Michaleski and Alban sent this evidence to police officials in Broward County, Florida, who conducted their own inquiries into the matter. *See McLaughlin v. Alban*, 775 F.2d 389, 391 (D.C.Cir.1985). Florida authorities prosecuted an information for perjury against McLaughlin in Florida state courts and secured his extradition. The perjury infor-

mation was later dismissed, and the dismissal was affirmed on appeal. No further judicial proceedings have been instituted against McLaughlin.

In 1979, after the information for perjury had been brought but before he was extradicted to Florida, McLaughlin initiated his own seven-year campaign of litigation against those involved in the investigations and prosecution. He and his wife first filed suit in the Circuit Court for Montgomery County, Maryland. A seven-count Amended Declaration, filed by McLaughlin in 1981, alleged common law claims for Abuse of Process (Count I), False Imprisonment (Count II), Malicious Prosecution (Count III), Intentional Infliction of Emotional Distress (Count IV), Invasion of Privacy (Count V), Business Tort (Count VI), and a final claim for Denial of Constitutional Rights (Count VII) that incorporated all the allegations under the other counts by reference. In the Declaration McLaughlin named as defendants Alban; Cheshire; Montgomery County, Maryland; Robert J. DiGrazia, then Chief of Police for Montgomery County; the Montgomery County Department of POlice; and numerous "J. Does." Pretrial proceedings were extremely complicated. When the case finally went to trial in the fall of 1983, only Cheshire and DiGrazia remained as defendants and the remaining claims were for abuse of process, false imprisonment in Maryland, malicious prosecution in Maryland, tortious interference with contract, and denial of constitutional rights. Following a five-week trial, the judge directed a verdict for DiGrazia on all counts and for Cheshire on all counts except the false imprisonment, malicious prosecution, and tortious interference with contract claims. The jury then rendered a general verdict for Cheshire on these remaining counts. The Court of Special Appeals in Maryland dismissed the appeal, and the Court of Appeals of Maryland denied certiorari.

Within a week of filing the Amended Declaration in the Maryland Circuit Court, McLaughlin and his wife also filed suit in the United States District Court for Maryland and in the United States District Court for the District of Columbia. Although these suits each named a number of different defendants, each was otherwise identical to the Amended Declaration in the Maryland state court. The suit in the United States District Court for Maryland named appellees Michaleski and *The Post* as defendants, along with a Delaware attorney, several law enforcement officials and prosecutors from Florida, the city of Fort Lauderdale, and the state of Florida. The judge first dismissed Michaleski as a defendant to effect complete diversity of citizenship between all parties on all counts. In an order dated January 22, 1982, he dismissed as to all the other defendants except *The Post* and Fort Lauderdale police officer Muriel Waldman, and stayed further proceedings pending resolution of the Florida perjury charge. On February 29, 1984, the court granted summary judgment to the remaining defendants on all seven counts. This decision was based on the preclusive effects of prior judgments of the Circuit Court for Montgomery County and the District Court of this circuit. In a further order dated June 25, 1984, the court denied McLaughlin's Motion for Reconsideration. McLaughlin did not appeal.

The identical complaint filed in the District Court for this circuit named Cheshire and Alban as defendants. In that case, the judge first declined to exercise pendent jurisdiction over the six common law claims. He granted full summary judgment to Cheshire on the constitutional count. Following presentation of the plaintiff's case, the court granted a directed verdict for Alban on the constitutional claims. This court affirmed on appeal. *McLaughlin v. Alban*, 775 F.2d 389 (D.C.Cir.1985).

On June 11, 1984, following final judgments against him in the Maryland state courts, the District Court for the District of Columbia, and the District Court for Maryland, McLaughlin filed in the District Court for the District of Columbia the present, and fourth, suit. This complaint named

Cheshire, Alban, Michaleski, *The Post*, Benjamin C. Bradlee (the Executive Editor of *The Post*), and Montgomery County as defendants. It repeated McLaughlin's claim to damages for violation of a common law right against malicious prosecution (Count IV), and asserted violations of more specific constitutional rights to privacy (Count I), against false imprisonment (Count II), and to due process of law (Count III). In an opinion dated December 21, 1984, the district judge granted motions to dismiss all counts of the complaint. In doing so, he relied chiefly on the preclusive effect of the prior rulings in all three previous suits. Although the judge denied the defendants' request for sanctions, he warned McLaughlin that he would reconsider sanctions if McLaughlin persisted in attempting to relitigate claims that had already been adjudicated. Subsequently, McLaughlin filed four post-judgment motions: a request for reconsideration under Fed.R.Civ.P. 59(e) on grounds that the dismissal had violated his right to trial by jury under the seventh amendment; a "renewed Rule 59(e) motion" that alleged a right to further proceedings that would consider whether he had been denied a "full and fair opportunity" to litigate his claims in prior proceedings; and two separate motions to amend his complaint. In an opinion dated February 26, 1985, the court found not only that all of these motions were "frivolous" but that they had "convinced the court that McLaughlin brought this entire lawsuit, with its attendant frivolous motions, in bad faith." *McLaughlin v. Bradlee*, 602 F.Supp. 1412, 1418 (D.D.C.1985) (order denying post-judgment motions and imposing sanctions). As sanctions, the court ordered McLaughlin to pay all reasonable costs and attorneys' fees that the defendants had incurred. *See* Fed.R.Civ.P. 11; 28 U.S.C. § 1927 (1982). The total sanctions amounted to $12,904.07.

This case presents consolidated appeals from the decisions of December 21, 1984, and February 26, 1985. We will first treat the substantive findings of the District Court, then the issues surrounding the imposition of sanctions on McLaughlin.

## II.

Preclusion doctrine provides ample means to dispose of repetitive suits like this one. The traditional doctrine of issue preclusion, often termed collateral estoppel, requires that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). Courts in recent years, prompted largely by concern for effective management of judicial resources and for avoidance of repeated litigation, have adjusted the forms of this traditional common law concept and have selectively expanded its reach. *See generally* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* §§ 4403, 4463–65 (1981). Most notably for purposes of this case, the restrictive requirement of "mutuality," which formerly allowed issue preclusion to be invoked only by parties to an initial suit or their privies, has disappeared altogether in suits between private litigants. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

We have no doubt that issue preclusion presents an entirely sufficient basis for denying McLaughlin's claims. This court has recently recapitulated the standards for establishing the preclusive effect of a prior holding. First, the same issue "must have been actually litigated, that is, contested by the parties and submitted for determination by the court." *Otherson v. Department of Justice*, 711 F.2d 267, 273 (D.C.Cir.1983). Second, that issue "must have been 'actually and necessarily determined by a court of competent jurisdiction.'" *Id.* (citing *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973,

59 L.Ed.2d 210 (1979)).[1] Application of these standards to the two counts remaining in this suit—the allegation in Count I that the appellees violated McLaughlin's constitutional privacy right and the charge in Count III that "discovery fraud" in the Maryland state court proceedings abused his right to due process—leaves no question that McLaughlin's day in court is over.[2]

■ We begin with the constitutional privacy issue. Applying the first of the considerations enunciated in *Otherson,* we have little doubt that the earlier cases in the Maryland state courts and the District Court for the District of Columbia encompassed actual litigation of essentially the same issues of constitutional privacy as arise from the claim McLaughlin asserts here.[3] An issue qualifies as "actually litigated" when it is "contested by the parties and submitted for determination by the court." *Otherson,* 711 F.2d at 273. The identical complaints filed in the prior cases encompass constitutional privacy issues remarkably similar to the one asserted here. In these complaints, the broad assertion in Count VII of constitutional violations under section 1983 incorporated "all of the facts and matters referred to in" the complaint, including those under the other counts. Appellee's Record Excerpts at 157 (Amend-

ed Declaration in Maryland state court, which presents counts identical to those raised in federal district court in the District of Columbia). Among the specific counts thus included was a common law count entitled "Invasion of Privacy." There McLaughlin accused a variety of defendants of publicizing "in a manner highly offensive to a reasonable person" matters pertaining to plaintiff's private life, *id.* at 155, and of intruding into his private affairs by making a "substantial number of persons" aware of "unwarranted implications ... that McLaughlin was involved with organized crime," *id.* at 156.

On this basis, we believe the issues raised by the constitutional privacy claim in this case were both "contested by the parties" and "submitted for determination" before the other courts. *Otherson,* 711 F.2d at 273. Here, any differences between this claim and the constitutional privacy claim asserted in the previous cases appear to us no more than cosmetic changes McLaughlin has made to perpetuate litigation on the same basic issues. For example, in this case for the first time he specifically alleges that Alban passed on information to Cheshire. When he first brought suit in Maryland state court, however, he expressly based his privacy claims on the actions of Alban and Cheshire in investigating and

1. The *Otherson* decision also mentions as a third factor that preclusion in the second trial "must not work an unfairness" because the party to be bound lacked as strong an incentive to litigate the issue in the first trial or for another reason. 711 F.2d at 273. That factor has no bearing on this case. The party to be bound here is the plaintiff-appellant, who has now brought essentially the same claims in four different suits. On each occasion, he has had the same incentive and ample opportunity to litigate these issues.

2. McLaughlin concedes that our decision in *McLaughlin v. Alban,* 775 F.2d 389 (D.C.Cir. 1985), "finally disposes of any grounds for further litigation" of his claims for malicious prosecution in Count II and for false imprisonment in Count IV of this suit. *See* Updating Brief for the Appellant at 2. The preclusive effect of that case on these issues is clear. Our conclusion that Florida authorities conducted an independent investigation of the basis for the perjury information filed against McLaughlin in Flor-

ida, *see* 775 F.2d at 391, prevents the Maryland officials or private citizens named in this suit from being held responsible under 42 U.S.C. § 1983 (1982) for his prosecution and detainment under that information. There can be no doubt that the holding on this issue was "necessary to the outcome of the first action," *Parklane Hosiery,* 439 U.S. at 326 n. 5, 99 S.Ct. at 649 n. 5 (quoted in *Otherson,* 711 F.2d at 273), that the issue was actually litigated, and that the opportunity to litigate was full and fair.

3. With respect to both the constitutional privacy count and the abuse of process count remaining in this suit, we rest our finding of issue preclusion solely on the decisions reached by the Maryland state courts and the District Court for the District of Columbia. We avoid any reliance on the Maryland District Court's decision because its emphasis on claim preclusion, which does not require the precluded claims to have been actually litigated in any prior case, cannot serve as the basis for issue preclusion in a subsequent case.

reporting on his background. Although the complaint in that case and the two subsequent cases did not allege specifically that Alban passed on information to Cheshire, it clearly focused on exchanges of the same information in the same meetings. *See* Appellee's Record Excerpts at 148, 149. Nor does the fact that McLaughlin failed in the prior cases to specify that the exchanged information remained unpublished change the basic issues raised by the constitutional privacy count. We think the precise issue raised in those cases is the same as that raised here, but even if they are not precisely the same, "nevertheless the basic issue in both is the same." *St. Lo Construction Co. v. Koenigsberger*, 174 F.2d 25, 27 (D.C.Cir.), *cert. denied*, 338 U.S. 821, 70 S.Ct. 66, 94 L.Ed. 498 (1949). That issue is whether the defendants unlawfully intruded upon McLaughlin's privacy by their conduct in the investigations. In addition, even if the issues are not precisely the same, most of the considerations that the *Restatement (Second) of Judgments* (1982) finds relevant to whether overlapping issues are "essentially the same" favor preclusion: the issues in the two suits are very "closely related," there remains at least "a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first," and evidentiary proceedings in the first action could "reasonably be expected to have embraced the matter sought to be presented in the second." *Id.* § 27 comment c; *see also Starker v. United States*, 602 F.2d 1341, 1344–45 (9th Cir.1979).

Nor is there any doubt that the issues raised by the constitutional privacy claim were "actually determined" in the previous suits. McLaughlin litigated these issues against Alban and Cheshire in Maryland state court, where it was held that McLaughlin failed to offer enough evidence to support his contention that either defendant had infringed on any of his constitutional rights. The same issues provided the focus of the litigation in the District Court for the District of Columbia, where the court granted defendants Alban and

Cheshire either summary judgment or a directed verdict on all of McLaughlin's constitutional claims. This court affirmed. *See McLaughlin v. Alban*, 775 F.2d 389 (D.C.Cir.1985).

McLaughlin asserts singularly unconvincing objections to this conclusion. He again raises the claim he made before the District Court that Alban's testimony in the Maryland state trial court on October 19, 1983, provides the basis for a new privacy issue different from the ones before the other courts. The District Court found this claim "nothing more than an assertion that the plaintiff has newly-discovered evidence to support his earlier privacy claims, brought in three separate courts." *McLaughlin v. Bradlee*, 599 F.Supp. 839, 846 (D.D.C.1984). We agree, and find that the issues remain the same even with this allegedly new evidence, which actually came to light well before the District Court for this circuit rendered a decision on September 13, 1984. The same set of activities, the same principals, and essentially the same legal theory remain the focus of this dispute. *Cf. McCord v. Bailey*, 636 F.2d 606, 609 (D.C.Cir.1980), *cert. denied*, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981).

McLaughlin also argues that before this court's initial opinion in *Tavoulareas v. Washington Post Co.*, 724 F.2d 1010, *vacated*, 737 F.2d 1170 (D.C.Cir.1984), he "had no legal reason to believe he might have a constitutional claim for Alban's non-publicized disclosure of personal information about him." Brief for the Appellant at 30. It is difficult to take this point seriously, for McLaughlin's attorney relied in oral argument on *Nixon v. General Services Administration*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 856 (1977), a case decided seven years before *Tavoulareas*, as the basis for the same claim. Even were we to accept McLaughlin's argument as not disingenuous, it remains impossible to accept the now-vacated opinion he relies on as indicative of "any major doctrinal shifts" that would constitute a "change in the legal climate" sufficient to remove the pre-

clusive effect of earlier determinations on these issues. *Montana v. United States,* 440 U.S. 147, 161–62, 99 S.Ct. 970, 977–78, 59 L.Ed.2d 210 (1979); *see also* 1B J. Moore, *Moore's Federal Practice* ¶ 0.448 (2d ed.1984).

We also find that the determination of these issues was "necessary to the outcome of the first action." *Parklane Hosiery Co. v. Shore,* 439 U.S. at 326 n. 5, 99 S.Ct. at 649 n. 5. This court has interpreted this requirement to mean that the disposition in the first suit was the basis for the holding with respect to the issue and not "mere dictum." *Safir v. Dole,* 718 F.2d 475, 482 (D.C.Cir.1983); *see also Association of Bituminous Contractors, Inc. v. Andrus,* 581 F.2d 853, 860 (D.C.Cir.1978). Little discussion is necessary on this point. In this case, application of the necessity criterion "involve[s] nothing more than a straightforward inquiry whether a particular issue was merely incidental to the first judgment." 18 C. Wright, A. Miller & E. Cooper, *supra,* § 4421, at 193. Clearly the issue of whether appellant McLaughlin's claimed constitutional right to privacy had been violated by the members of this alleged "conspiracy" was not "merely incidental" to the courts' rejection in previous cases of his broad claims that his constitutional rights had been infringed. Those latter claims had encompassed the constitutional privacy claim raised in this case; the previous determinations of those claims in Maryland state court and in the District Court of this circuit, both of which were adverse to McLaughlin, necessarily foreclose the issues raised here.

■ The constitutional claim for abuse of process is also precluded by the decisions of the Maryland state courts and the District Court of this circuit. In Count III of the instant suit McLaughlin alleges that Alban and Cheshire, acting with and on behalf of the other defendants, conducted a general conspiracy of "discovery fraud" that prevented release of incriminating files to McLaughlin and kept him from finding out until October 19, 1983, that Alban had disclosed personal information

about McLaughlin to Cheshire and *The Post.* Appellant's Record Excerpts at 11–13, 14–15. McLaughlin's initial abuse-of-process claim resulted in an unfavorable directed verdict in Maryland state court. On appeal of that decision, he asserted further grounds for this claim arising out of the state court proceeding itself. This claim, however, was also rejected.

In his complaint in this case, McLaughlin has done little more than embellish his previous arguments on these issues with additional factual allegations and formulate them as a separate count. We have no doubt that the basic question here was actually litigated before the Maryland state courts and the District Court of this circuit, both of which rejected McLaughlin's arguments, and that this question was necessarily decided by them. Since McLaughlin offers no reason why any allegedly new evidence he presents before us could not have been presented in the prior cases, we can only conclude that issue preclusion bars his claim. His renewed efforts to press what is essentially the same point leave us unable to conclude that the new evidence is crucial to the extent that plaintiffs were deprived of a full and fair opportunity to litigate. The earlier decisions remain dispositive on this issue regardless of whether they were right. *See United States v. Moser,* 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262 (1924).

■ Although not all of the defendants who participated in this suit were named as parties in the three previous cases, those courts' findings are also binding upon appellant McLaughlin in his attempt once again to raise the same issues against the additional defendants named here. The doctrine of issue preclusion is intended to free courts and parties from the onerous and unnecessary task of relitigating issues that already have been decided in a full and fair proceeding. Invocation of the doctrine is no longer restricted to those who were parties to the first litigation or their privies, for it has come to be widely accepted that usually little good and much harm can come from allowing a de-

termined plaintiff to retry the same issues in exhausting fashion against successive defendants. *See, e.g., Parklane Hosiery,* 439 U.S. at 327–28, 99 S.Ct. at 649–50. In rejecting that traditional "mutuality" restriction, the Supreme Court has noted that "no significant harm flows from enforcing a rule that affords a litigant only one full and fair opportunity to litigate an issue, and there is no sound reason for burdening the courts with repetitive litigation." *Standefer v. United States,* 447 U.S. 10, 24, 100 S.Ct. 1999, 2008, 64 L.Ed.2d 689 (1980). This case offers no good reason to depart from that understanding.

### III.

■ McLaughlin also challenges the imposition of sanctions by the District Court under its explicit authority to do so. *See* Fed.R.Civ.P. 11; 28 U.S.C. § 1927 (1982). His arguments on this issue raise no serious questions about the actions of the District Court. This court has only recently pointed to the "large authority the district court has to sanction filings that protract proceedings without bringing new matter to light." *Elmore v. Shuler,* 787 F.2d 601, 603 (D.C.Cir.1986). The amended language of Rule 11 *requires* the District Court to impose some form of sanction "when warranted by groundless or abusive practices." *Westmoreland v. CBS,* 770 F.2d 1168, 1174 (D.C.Cir.1985). As the District Court observed, when preclusion doctrine clearly forecloses consideration of the merits, the groundlessness of the litigation or the bad faith in which it was brought may become especially apparent. *McLaughlin v. Bradlee,* 602 F.Supp. 1412, 1417 (D.D.C.1985) (citing *Huettig & Schromm v. Landscape Contractors Council,* 582 F.Supp. 1519, 1521 (N.D.Cal. 1984); *Andre v. Merrill Lynch Ready Assets Trust,* 97 F.R.D. 699, 702 (S.D.N.Y. 1983)). Taken together, the three previous suits had resolved the questions in this case against McLaughlin, and the decisions that came later had already begun to rely on the preclusive effect of decisions in other courts. Even after the District Court had issued a final judgment in this case

finding preclusion appropriate, and had warned McLaughlin that the court had seriously considered applying sanctions, he persisted in filing four insubstantial post-judgment motions. These facts alone would be sufficient to support the conclusion of the District Court that McLaughlin undertook this suit "to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11.

It makes no difference that the District Court decided to impose the sanctions for the litigation only after the post-judgment motions, or that the court changed its prior position with respect to sanctions in doing so. The advisory committee notes to amended Rule 11 explicitly state that "[t]he time when sanctions are to be imposed rests in the discretion of the trial judge," and the final judgment gave McLaughlin explicit notice that further "litigation on these issues" would prompt reconsideration of the decision not to award sanctions. *McLaughlin v. Bradlee,* 599 F.Supp. 839, 850 (D.D.C.1984).

■ Nor is McLaughlin entitled to a hearing on whether sanctions should be imposed or what level of sanctions should apply. The notes to the amended rule prescribe that "the court must to the extent possible limit the scope of sanction proceedings to the record," and allow discovery "only in extraordinary circumstances." Fed.R.Civ.P. 11 advisory committee's note to 1983 amendment. According to the advisory committee, these practices help to "assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions." *Id.* While it is perhaps conceivable that due process could require a hearing on sanctions under this rule in certain circumstances, McLaughlin offers no basis for any further proceedings on that subject here. The trial court, as a primary participant in the proceedings, had already observed those elements of the litigation most relevant to the criteria for imposing sanctions under the rule, most

notably McLaughlin's conduct during the trial. While a hearing might on some occasions aid in examining the financial situation of a litigant upon whom sanctions are to be imposed, here McLaughlin concedes that such information may be found in the record. Brief for the Appellant at 44 n. 23. The opportunity the District Court provided McLaughlin to respond to the defendants' applications for fees and costs, *see McLaughlin v. Bradlee,* 602 F.Supp. 1412, 1416–17 (D.D.C.1985), gave him ample opportunity to set forth whatever objections he had to the level of sanctions imposed.

■ In the previous suit McLaughlin brought in this court, we were strongly tempted to invoke our own authority, *see* Fed.R.App.P. 38; 28 U.S.C. § 1912 (1982), and to impose similar sanctions on McLaughlin for that appeal. Here we find the temptation at least as strong. We refrain from doing so in part because we concede that our opinion in *McLaughlin v. Alban* did not leave the preclusive effect of the prior suits on this case entirely clear. By now, however, it should be obvious to all concerned that the present appeal should never have been brought. Like the appeal in *McLaughlin v. Alban,* it is "not only frivolous but irresponsible." 775 F.2d at 392. We take this opportunity to place attorneys on notice that we intend to impose sanctions as a matter of course for such "harassment by litigation." *Id. See, e.g., Reliance Insurance Co. v. Sweeney Corp.,* 792 F.2d 1137 (D.C.Cir.1986); *American Security Vanlines, Inc. v. Gallagher,* 782 F.2d 1056 (D.C.Cir.1986).

*It is so ordered.*