**1250 24TH STREET ASSOCIATES LIMITED PARTNERSHIP, et al., Plaintiffs,**

v.

**Philip J. BROWN, et al., Defendants.**

**Civ. A. No. 86–474.**

United States District Court, District of Columbia.

March 21, 1988.

---

**18.** Access is not appropriate where the claims are barred by *res judicata* or are filed for harassment or delay purposes.

Richard O. Duvall, Stephen A. Bogorad, Paul J. Kiernan, Washington, D.C., for plaintiffs.

Nicholas A. Addams, Washington, D.C., for defendants.

Peter Kolker, Washington, D.C., for trustee.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

### I. *Introduction*

We have previously considered this case on several occasions [1] and will not, therefore, recite again the detailed background of this action. Suffice it to say that on May 13, 1986 we issued an order which, *inter alia*, permanently enjoined the defendants [2] and their representatives from issuing any notices of default under the Ground Lease without first obtaining the prior approval of this court, until plaintiffs obtained permanent financing for the construction and development of the 1250 24th Street project. Plaintiffs now move for a modification of that injunction since it now appears that certain recent acts of the de-

**1.** *See* Memorandum Opinions of April 28, 1986 and May 13, 1986.

**2.** The term "defendants" shall hereinafter be used to refer to the debtor-defendants only. They are William Brown, Philip Brown and B &

fendants are designed to circumvent the purpose of our May 13, 1986 order. Specifically, plaintiffs request that we modify our injunction to 1) bar defendants from re-asserting in any statements, written or oral, the existence of 'defaults' and 'breaches' which have been previously resolved; 2) restrain defendants from asserting in any estoppel certificate or other document the existence of any default without first obtaining the approval of this court; 3) require defendants to promptly execute documents "reasonably required" in connection with leasing and financing the building, including estoppel certificates; and 4) restrain defendants from commencing any litigation based on the existence of alleged defaults, breaches, or irregularities in the Ground Lease without first obtaining the approval of this court. For the reasons stated below, we modify our prior order in the manner specified. Plaintiffs have also requested that we appoint a receiver or trustee to act on behalf of the defendants, or a special master to assist us in the administration of this suit. For the reasons set forth, *infra*, we deny this request.

### II. *Background*

In our May 13, 1986 order we, as previously indicated, granted plaintiffs' motion for a permanent injunction restraining defendants and their representatives from issuing future default notices on the Ground Lease without obtaining the prior approval of this court. We indicated in our accompanying order that such approval would be based upon a showing that the proposed notice of default was made in "good faith" and with a "substantial and reasonable basis."

We issued the injunction based upon our determination that plaintiffs had previously issued a series of "spurious" default notices, and had "utterly failed to prove" in their motion for permission to issue a third

W Management. John Guinee Jr., trustee in bankruptcy for the debtor-defendants, will be referred to as "Trustee", although he is also named as a defendant in this action.

default notice[3] that plaintiffs had, as alleged, defaulted on the Ground Lease when they removed certain side walls. May 13, 1986 Memorandum Opinion at 5, 19. We indicated at that time that, from the whole of defendants' conduct, "defendants appear[ed] determined somehow to ... torpedo the entire enterprise".[4] *Id.* at 19.

We found that the issuance of similarly invalid notices would irreparably harm plaintiffs and jeopardize the entire development of plaintiffs' project. This was so because a notice of default from the landlord would operate as a default on the Leasehold Deed of Trust securing the construction from American Security Bank, and unless plaintiffs could obtain judicial relief within thirty days of the notice, the bank would be entitled to cut off additional advances under the loan. This would curtail construction, and threaten to destroy plaintiffs' entire investment in the project. We also found that there was no adequate remedy at law, because financial compensation, even if it were available from defendants who were then in bankruptcy, would not compensate plaintiffs for the injury to their business reputation and for the extended, and perhaps permanent, delay of the full development of their project.[5]

Plaintiffs allege that defendants have continued to disrupt their "quiet enjoyment" at each and every turn—litigating and relitigating an expanse of issues in the Bankruptcy, Federal and District of Columbia courts, and the arbitration and public policy arenas.[6] Despite the sea of litigation which has indisputably accompanied the construction and development of this project, the building at 1250 24th Street is now nearly complete, and project financing is entering into its final and critical stage. Plaintiffs argue that unless defendants are further enjoined, the project financing and leasing may be severely jeopardized, due to the "atmosphere of commercial unreasonableness and irrationality" which defendants have and will continue to create. Plaintiffs' Memorandum in Support of their Motion to Modify May 13, 1986 Injunction (Pltf. Memo.), at 21.

### III. *Discussion*

We clearly possess the jurisdiction and power to modify our original injunction so as to effectuate its intended purpose and result. It is beyond challenge that the standard for determining whether modification is appropriate is whether the purposes of the litigation as incorporated into the injunctive decree have been fully achieved. *See United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 252, 88 S.Ct. 1496, 1501, 20 L.Ed.2d 562 (1968) (if an injunction has failed to achieve its intended results, the district court has the power and the duty to modify the order). *See also Exxon Corp. v. Texas Motor Exchange of Houston*, 628 F.2d 500, 503–04 (5th Cir.1980) (an

---

**3.** On March 12, 1985 Judge Oberdorfer, sitting as motions Judge, invalidated two default notices previously issued by the defendants on the grounds that the Trustee, who had sole authority to act, had not ratified and consented to issuance of the notices. He also enjoined the issuance of future default notices unless they were ratified by the Trustee or otherwise approved by this or the Bankruptcy Court. When the Trustee refused to consent to the issuance of the third default notice, defendants filed a motion with this court for permission to issue it themselves.

**4.** In our May 13, 1986 Memorandum Order we analyzed the array of claims presented in defendants' counterclaim, finding that each lacked merit, and that several bordered on frivolity.

**5.** We also indicated that a balancing of the interests of the parties favored a granting of the injunction, because of the limited inconvenience to defendants. The injunction was limited both in duration and in scope. The public interest, we determined, weighed in favor of such an injunction, because considerations of public policy favored encouraging contracts with bankrupt parties, and this could best be done by ensuring plaintiffs the benefit of their bargain, including the quiet enjoyment of the property they had leased.

**6.** We note that defendants have initiated several claims and counterclaims and commenced an appeal of the Zoning Administrators' Order approving the paint color and window glass used in the 1250 24th Street project. Thus, despite defendants' posture in this case, it is clear that they have often acted offensively, despite their protestations to the contrary. *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion to Modify May 13, 1986 Injunction (Def. Memo.) at 26.

injunction may be modified to impose more stringent requirements on the defendant when the original purposes of the injunction are not being fulfilled); *U.S. v. City of Chicago,* 663 F.2d 1354, 1360 (7th Cir.1981); *Coleman v. Block,* 632 F.Supp. 997, 1002 (D.N.D.1986); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2961 at 600, 602 (1973). Our essential inquiry, then, is whether modification is necessary in order to fulfill the original purpose of our injunctive order. We find that it is.

The central purpose of our May 13, 1986 injunctive order was to ensure that defendants would not be allowed to disrupt the financing of the 1250 24th Street project with groundless and spurious allegations. We indicated at that time that "every notice of default, no matter how frivolous and without merit, threaten[ed] to destroy plaintiffs' entire investment in the property." May 13, 1986 Memorandum Order, at 20. To this end, we issued an order restraining defendants from asserting spurious default notices.

Our primary intent was to restrain defendants from "torpedoing" the project by the use of baseless or harassing litigation techniques. At the same time, we deliberately framed our order so that defendants would retain their ability to issue default notices, should their claims be asserted in good faith, and with a "substantial and reasonable basis." Defendants have not gotten our message.

■ It is apparent from the manner in which defendants have proceeded that their primary motive here is not vindication of their legal rights, but rather harassment[7], in the hopes that the plaintiffs will ultimately retreat. We find from the whole of the record in the related cases[8] before us that defendants have, since the issuance of our May 13, 1986 Memorandum Opinion, conducted a relentless campaign to litigate every possible issue, no matter how repetitious[9] or lacking in merit,[10] in order to harass plaintiffs, and to make leasing and permanent financing much more difficult and burdensome, if not impossible. Accordingly, defendants' conduct continues to jeopardize plaintiffs' ability to obtain permanent financing and to complete leasing the building.[11] Thus, a modification of our

---

7. We note that in similar situations judges have issued or considered Federal Rule of Civil Procedure 11 Sanctions, *sua sponte,* upon a finding of harassive motive and intent. *See McLaughlin v. Brandlee,* 602 F.Supp. 1412 (D.D.C.1985), *Aff'd* 803 F.2d 1197 (1986). *See also Zerman v. Jacobs,* 113 F.R.D. 13, 14 (S.D.N.Y.1986). We refrain from so doing *at this point in time.* We pause to note, however, that defendants are mistaken in their belief that a court "agrees" with a party simply because it refrains from issuing Rule 11 sanctions. *See* Def. Memo. at 15.

8. These related matters are *Kaempfer, et al. v. Brown, et al.,* C.A. No. 87–50; *In Re B & W Management,* C.A. No. 87–1734, *In Re B & W Management,* C.A. No. 87–3264. We take judicial notice of these proceedings.

9. Defendants have in the past filed two suits in Superior Court asserting claims that we have previously decided. *See* discussion *Kaempfer et al. v. Brown et al.,* 684 F.Supp. 319, 325 n. 16 (D.D.C.1988). In addition, defendants have shown a marked propensity to continue to raise issues in these proceedings, even after they have been definitively decided by this court.

We note that where issues have been previously litigated, the bad faith or groundlessness with which the claims have been brought be-

comes especially apparent. *McLaughlin v. Bradlee,* 803 F.2d 1197, 1205 (D.C.Cir.1986). This is the case here.

10. A review of the entire record is impossible in the confines of this opinion. Suffice it to say that defendants have succeeded in very few of their voluminous motions and claims, not because we harbor any malice against them, but because their claims have simply lacked merit. The record is replete with examples.

11. It is clearly not necessary for us to find, in order to modify our prior order, that if we deny the present motion plaintiffs will be irreparably harmed without adequate remedy at law. We nevertheless find that they will be. The record in this case indicates that the ground lease is subordinate to defendants' fee interest in the property. Accordingly potential permanent lenders will examine the integrity of the ground lease as security for the loan. Pltf. Memo. Exhibit (Ex.) A. Defendants' relentless assault on the terms and validity of the ground lease, and their excessive and harassive litigation strategy, indicate that continued efforts of this type will further the image of commercial unreasonableness and pose a serious and permanent threat to plaintiffs' ability to obtaining financing and complete the leasing of the building.

The construction loan totals $38.5 million, and is primarily secured by assignment of the

May 13, 1986 order is necessary to fulfill our original purpose—*i.e.* to ensure that the project is not sabotaged by extensive but baseless claims and litigation efforts which create an aura of commercial unreasonableness, and thus significantly discourage potential permanent lenders from investing in the project. The essential question before us then is what form the modification or our May 13, 1986 order should take. Acting as a court of equity we possess considerable flexibility in structuring an appropriate remedy. *See Hecht Co. v. Bowles*, 321 U.S. 321, 329–30, 64 S.Ct. 587, 591–92, 88 L.Ed. 754 (1944) ("the essence of equity jurisdiction has been the power to do equity and to mould each decree to the necessities of the particular case"). Thus, we examine carefully "the practical realities and necessities inescapably involved in reconciling competing interests" in order to establish a remedy which is "a special blend of what is necessary, what is fair, and what is workable." *Lemon v. Kurtzman*, 411 U.S. 192, 200–01, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973) (Burger, C.J.).

Keeping in mind that defendants' primary right is to receive ground rent and their primary obligations are to ensure plaintiffs' quiet enjoyment of their leasehold and to execute necessary estoppel, non-disturbance and other certificates, we shape the injunctive relief accordingly. Our dual concerns are to ensure that plaintiffs' multi-million dollar project is not defeated by groundless and crippling litigation and other claims, and to ensure that plaintiffs maintain an opportunity to raise any "good faith" objections to the ground lease that they may have, assuming that there is a "substantial and reasonable basis" for their claims. With these equitable principles in mind, we proceed.

Accordingly, we hold that defendants may not assert in any estoppel certificate or other document reasonably necessary for leasing or financing the building, any alleged breach, defect or default in the ground lease without first obtaining the approval of this court. This is a narrow extension of our previous order of May 13, 1986 and is entirely consistent with its basic purpose.[12] The issuance of clean estoppel and other certificates is reasonably central to plaintiffs' ability to obtain permanent financing. We also order defendants to execute within five (5) business days of plaintiffs' request any and all documents reasonably required in connection with the leasing and financing of the building, including the issuance of estoppel certificates.

We also hold that defendants will be restrained from filing any future litigation based on the existence of alleged defaults, breaches or irregularities in the ground lease, or in connection with the fact situation involved in this suit, without first obtaining the approval of this court. As noted, we are convinced at this point that the purpose of many of these matters was not, as defendants assert, to vigorously promote their legal rights, but rather to "torpedo" the 1250 24th Street project, or to make plaintiffs' effort to develop the property as costly and burdensome as possible.

Our task in these proceedings is clear. It is to ensure that defendants receive the due process access to the courts to which they are entitled and also to protect plaintiffs from malicious and abusive litigation and to safeguard the integrity of the judicial process.

"It is now well established that a court may employ injunctive remedies to protect the integrity of the courts and the orderly and expeditious administration of justice." *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C.Cir.1985). Clearly at some point a "continuous pattern of groundless and vexatious litigation will ... support an or-

---

ground lease. The amount of permanent financing necessary is approximately $43 million. Pltf. Memo., Ex. A.

**12.** We note that the effect of issuing "tainted" estoppel certificates on plaintiffs' ability to obtain permanent financing is substantially similar to that stemming from the issuance of de-

fault notices. This modification, then, simply restrains defendants from acting in a manner contrary to the purpose of our original order (*i.e.* interfering with the financing and leasing of the project by asserting groundless and harassive allegations of wrongdoing and defects in the ground lease).

der against further filings or complaints without the permission of the courts." [13] *Sparrow v. Reynolds,* 646 F.Supp. 834, 839 (D.D.C.1986) (citing *In re Oliver,* 682 F.2d 443, 446 (3rd Cir.1982)). *See also In re Green,* 669 F.2d 779 (D.C.Cir.1981); *McLaughlin v. Bradlee,* 602 F.Supp. 1412 (D.D.C.1985), *aff'd* 803 F.2d 1197 (1986). We find that that point has been reached.

■ While a propensity for litigiousness alone is not sufficient grounds on which to issue an injunction in the form envisioned here, an order enjoining future suits is appropriate where a litigant acts in bad faith, or for the purpose of harassment. *Ruderer v. United States,* 462 F.2d 897 (8th Cir.1972), *cert. denied* 409 U.S. 1031, 93 S.Ct. 540, 34 L.Ed.2d 482. We have no difficulty in finding that these improper motives and purposes are present here. In this context, an order enjoining future suits is both necessary [14] and proper.

As the Court of Appeals for the Second Circuit has recently stated, in determining whether or not to restrict a litigant's future access to the courts, a district court should consider:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. Ultimately, the question the

court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

*Safir v. United States Lines, Inc.,* 792 F.2d 19, 24 (2nd Cir.1986), *cert. denied* —— U.S. ——, 107 S.Ct. 1323, 94 L.Ed.2d 175 (1987). We find that, in accordance with the principles articulated in *Safir,* and those outlined earlier, an injunction should issue.

Accordingly, we hold that defendants must seek our permission before commencing litigation of the kind outlined. In seeking leave of court, defendants must certify both that the claims which they raise are unconnected with fact situations previously litigated, and that their claims have never before been decided by this or any other court. In addition, defendants must certify that the proposed action is brought in good faith and not for the purpose of harassment. We give clear warning that if defendants attempt to commence such litigation without so certifying, they may be found in contempt of court. In addition, as always, any pleadings and papers filed will be subject to the provisions of Rule 11 of the Federal Rules of Civil Procedure.

In the exercise of our equitable powers, we deny plaintiffs' request that we enjoin defendants from re-asserting in *"any statements,"* written or oral, the existence of "defaults" and "breaches" which have previously been resolved. The First Amendment to the Constitution counsels against this type of "prior restraint." Plaintiffs have cited no precedent for their request that we employ what amounts to *"res judicata"* in the speech context.[15] Plaintiffs

---

**13.** We are well aware that the facts in this case are different from those outlined in *Green, supra; Urban, supra;* and *Sparrow, supra.* While the defendants in this case have not filed the *number* of repetitive and frivolous suits involved in the listed cases, they have filed several repetitive and groundless, or near groundless suits and motions. In addition, we have found that defendants have used the litigation process in an abusive manner. We find that in this context the principles outlined in the above mentioned cases are equally applicable and instructive.

**14.** An injunction of this type is necessary given our prior determination that the 1250 24th Street project faces irreparable injury, for which there would be no adequate remedy at law.

**15.** We note that our decision should not be interpreted by defendants as a license to make inaccurate statements about issues which have already been decided.

332

have other remedies to redress such conduct.

█ We also decline plaintiffs' request that we appoint a trustee or receiver to perform the needed administrative tasks. At this juncture, we believe that this remedy would be too harsh. We have warned defendants that we will no longer tolerate the abusive litigation tactics which they have employed in the past. We will give defendants an opportunity to demonstrate a willingness to act in "good faith" before imposing such a serious and intrusive remedy. We hope that further consideration of this issue will not be necessary. We also reject plaintiffs' suggestion that we appoint a special master. We see no reason to create another forum for defendants to litigate in.

An order consistent with the foregoing is entered this day.

### ORDER

We have considered plaintiffs' Motion for Modification of our May 13, 1986 Injunctive Order, the responses thereto and the entire record in this case and the related cases before us. We find that modification of our original injunctive decree is necessary to fulfill its purposes. For the reasons set forth in our accompanying Memorandum Opinion, it is by the court this 18th day of March, 1988

ORDERED that defendants, Philip Brown and William J. Brown, individually and where applicable in their other capacities (including any capacity which they may have or hereafter acquire as directors, officers and shareholders of B & W Management, Inc.), their agents, attorneys, employees and representatives are enjoined from asserting in any estoppel certificate or other document reasonably necessary in connection with the leasing or financing of the 1250 24th Street Project, the existence of any default or defect in the Ground Lease or subsequent amendments without first obtaining the approval of this court; and it is

ORDERED that defendants and the other aforementioned individuals shall execute all documents reasonably necessary in connection with the leasing or financing of the building within five (5) days of presentation by plaintiffs and it is

FURTHER ORDERED that defendants, and the other aforementioned individuals are enjoined from commencing any litigation based on the existence of alleged defaults, breaches or irregularities in the Ground Lease or amendments thereto without first obtaining the approval of this court.